# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2019-NMSC-009**

**Filing Date:  February 7, 2019**

**Docket No: S-1-SC-37227**

**UNITE NEW MEXICO,**
**HEATHER NORDQUIST,**
**ELECT LIBERTY PAC,**
**LIBERTARIAN PARTY OF NEW MEXICO,**
**and REPUBLICAN PARTY OF NEW MEXICO**

   **Petitioners,**

**v.**

**MAGGIE TOULOUSE OLIVER,**
**Secretary of State of New Mexico**

   **Respondent.**

## ORIGINAL PROCEEDING

Peifer, Hanson & Mullins, P.A.
Carter B. Harrison IV
Albuquerque, NM

SaucedoChavez, P.C.
Christopher Saucedo
Albuquerque, NM

Western Agriculture, Resource and Business Advocates, LLP
A. Blair Dunn
Albuquerque, NM

for Petitioners

Hector H. Balderas, Attorney General
Sean M. Cunniff, Assistant Attorney General
Dylan Kenneth Lange, Assistant Attorney General
Jane B. Yohalem, Special Assistant Attorney General
Santa Fe, NM

for Respondent

Hendricks Law
Michael E. Hendricks
Albuquerque, NM

for Amici Curiae

Ginger Grider, Rep. Paul Bandy, Rep. Jimmie C. Hall, Rep. James Townsend, Rep. Greg Nibert, Rep. Ricky L. Little, Rep. Bob Wooley, Senator Stuart Ingle, Senator Mark Moores, Senator Cliff Pirtle, Senator Steven P. Neville, Senator William E. Sharer, Senator William Payne, Senator Carroll H. Leavell, Senator James P. White, Senator Gay G. Kernan, Senator Candace Gould, Senator Ron Griggs, Senator William F. Burt, Senator Craig W. Brandt, Commissioner Will Cavin, Commissioner Robert Corn, Keith Riddle, Keith Manes

Amicus Curiae

Dr. Gavin Clarkson, Pro-Se
Las Cruces, NM

## OPINION

**NAKAMURA, Chief Justice.**

**{1}**    The Secretary of State (Secretary) sought to reinstate straight-ticket voting in the November 2018 general election. A coalition of voters, political parties, and political organizations (Petitioners) filed a petition for writ of mandamus asking this Court to order the Secretary to stop and make no further efforts to reinstate the straight-ticket option on grounds that she does not possess authority to do so. We agree with Petitioners. Whether straight-ticket voting shall once more be a ballot option in general elections in New Mexico is a policy question for our Legislature. The Legislature cannot delegate election policy determinations. The Secretary's efforts to reinstate straight-ticket voting without legislative approval violates separation of powers principles and is unlawful. The petition for writ of mandamus is granted.[1]

## I.    DISCUSSION

**{2}**    "The New Mexico Constitution gives this Court the power to issue writs of mandamus 'against all state officers.'" *State ex rel. League of Women Voters v. Herrera*, 2009-NMSC-003, ¶ 12, 145 N.M. 563, 203 P.3d 94 (citing N.M. Const. art. VI, § 3). The Secretary is a "state officer." *Id.* We have exercised our "original jurisdiction in mandamus in instances where a petitioner sought to restrain one branch of government from unduly encroaching or interfering with the authority of another branch in violation of Article III, Section 1 of our state constitution." *State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 11, 127 N.M. 272, 980 P.2d 55. This case presents this exact circumstance. Petitioners ask us to restrain the Secretary, an executive

---

[1]We announced this unanimous decision after deliberation following oral argument. This opinion memorializes and more thoroughly explicates the basis for our ruling.

branch official, from encroaching upon the authority of the legislative branch to make the election laws.

{3}     Petitioners contend that the Secretary cannot reinstate straight-ticket voting in the general election because only the Legislature may decide this question and that the Legislature has already decided that straight-ticket voting *shall not* be available to voters in the general election. The Secretary responds that "the New Mexico Legislature has never prohibited the inclusion of a straight-party voting option on the ballot," and that the Legislature "left this option, like other options involved in formatting the ballot, to be determined by the [Secretary]." She emphasizes that "the Election Code quite clearly gives the [Secretary] discretion on the formulation of the ballot" and directs us to NMSA 1978, Section 1-10-12(F) (2009) which provides that "[p]aper ballots shall: . . . be in the form prescribed by the [Secretary]."

{4}     The Secretary's arguments require us to examine (A) whether the Legislature may delegate to the Secretary the authority to decide whether to include the straight-ticket option on ballots in the general election, (B) the rich and complex history of straight-ticket voting in New Mexico, and (C) the text and history of Section 1-10-12(F).[2]

## A.     Separation of Powers and Nondelegation

{5}     The Secretary's position in this case is *not* that the Legislature decided that the straight-ticket option should be included on the ballot in the upcoming general election and delegated to her the task of implementing this policy choice. Rather, she contends that the Legislature intended "to allow the [Secretary], in the exercise of her discretion, to decide whether to include a straight-party voting option on the uniform ballot." It is her position that the Legislature delegated to her the threshold determination of whether to embrace straight-ticket voting at all. This claim is highly problematic.

{6}     The New Mexico Constitution grants to each of the three branches of state government distinct and exclusive powers. N.M. Const. art. III, § 1. ("The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted."). The Constitution further provides that "[t]he [L]egislature . . . shall regulate the manner, time and places of voting" and "shall enact such laws as will secure the secrecy of the ballot and the purity of elections and guard against the abuse of elective franchise." N.M. Const. art. VII, § 1(B). This language vests our Legislature with plenary authority over elections, an authority limited only by the Constitution itself. *See Chase v. Lujan*, 1944-NMSC-027, ¶ 24, 48 N.M. 261, 149 P.2d 1003 ("[E]xcept as prohibited, the

---

[2]We do not address Petitioners' claim that the Secretary was required to initiate rulemaking proceedings to reinstate straight-ticket voting. This claim is moot given our conclusion that only the Legislature may reinstate straight-ticket voting. We also do not address Petitioners' contention that the Secretary's attempts to reinstate straight-ticket voting infringes upon their constitutional rights. Petitioners have abandoned this contention.

[L]egislature has plenary power to regulate the manner of voting . . . ."); *see also People's Constitutional Party v. Evans*, 1971-NMSC-116, ¶ 10, 83 N.M. 303, 491 P.2d 520 ("Elections of necessity must be organized and controlled to protect the right of suffrage, secrecy of the ballot, and against confusion, deception, dishonesty and other possible abuses of the elective franchise. The Legislature is charged with the duty of enacting laws to accomplish the purity of elections and protect against abuses."); *City of Raton v. Sproule*, 1967-NMSC-141, ¶ 76, 78 N.M. 138, 429 P.2d 336 ("We are of the opinion that our constitution expressly contemplates and directs that the legislature shall provide the proper machinery for conducting elections for different purposes . . . .").

{7}     It is well understood that straight-ticket voting has meaningful impact on elections.  *See* Erik J. Engstrom and Jason M. Roberts, *The Politics of Ballot Choice*, 77 Ohio St. L.J. 839, 839-41, 864-65 (2016) (discussing attempts in several states to impose or abolish straight-ticket voting and observing that "ballot laws have become a new weapon in the quest for political power" and that, "in almost all cases, the actors who advocate for changes to the form of the ballot pursue changes that are likely to strengthen their hold on political power").  Whether to include the straight-ticket option in elections is a policy decision of some magnitude.

{8}     "The nondelegation doctrine limits, but does not completely prevent, the Legislature from vesting a large measure of discretionary authority in administrative officers and bodies." *Cobb v. State Canvassing Bd.*, 2006-NMSC-034, ¶ 41, 140 N.M. 77, 140 P.3d 498.  "The Legislature may not vest unbridled or arbitrary authority in an administrative body . . . and must provide reasonable standards to guide it." *Id.*  This is because "[l]egislative power cannot be delegated, and the Legislature cannot confer upon any person, officer, or tribunal the right to determine what the law shall be.  This is a function which the Legislature alone is authorized under the Constitution to exercise." *State v. Spears*, 1953-NMSC-033, ¶ 10, 57 N.M. 400, 259 P.2d 356 (quoting *State v. Briggs*, 77 P. 750, 750 (Or. 1904)).  This is not to say, of course, that the Legislature is precluded from delegating the implementation of a legislatively determined "scheme, policy, or purpose[.]" *Cobb*, 2006-NMSC-034, ¶ 41. This form of delegation is common in our modern, regulatory state. *See generally* 1 Jacob A. Stein, et al., *Administrative Law*, § 3.03[5], at 128-42 (2013).  Rather, what the Legislature cannot do is delegate the right to determine, in the first instance and wholesale, what that scheme, policy, or purpose will be. *See Yakus v. United States*, 321 U.S. 414, 426 (1944) ("Only if we could say that there is an absence of standards for the guidance of the Administrator's action, so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed, would we be justified in overriding its choice of means for effecting its declared purpose . . . .").

{9}     The Secretary's position in this case is precisely what the nondelegation doctrine forbids—that the Legislature delegated to her the authority to make the binary choice of whether to embrace straight-ticket voting or not.  In other words, to decide what the election law shall be.  The Legislature cannot delegate this authority, and to conclude otherwise would result in a violation of the separation of powers.  Our review of the history of straight-ticket voting in New Mexico assures us that our Legislature has never delegated this authority to the Secretary.

**B.     History of Straight-Ticket Voting in New Mexico**

**{10}** There are three facets to the history of straight-ticket voting in New Mexico: (1) our Legislature's former authorization of straight-ticket voting in general elections and its practice of carefully articulating how voters may exercise this ballot option, (2) the emergence and repeal of a statute requiring the straight-ticket option be included on emergency paper ballots, and (3) the introduction of voting machines in New Mexico and the passage and subsequent repeal of a statute requiring those machines to have straight-ticket voting capability. We address each of these matters separately. We begin at a period of time before straight-ticket voting appeared in our Election Code.

### 1. Straight-ticket voting in general elections

**{11}** In 1852, the Territorial Legislature passed an enactment that authorized the Governor to "prepare proper forms for the uniform and proper conducting of all elections to be conducted and held under the laws of this Territory[.]" 1882 General Laws of N.M., § 64 (Act of January 9, 1852). The act required the "secretary of the Territory" to "have all such forms . . . printed and distributed, as occasion may require." *Id.* This enactment appears in the 1884 Compiled Laws of New Mexico with minimal alteration. Section 1182, C.L. 1884. The 1884 compilation also includes a provision specifying that "[a]ll votes shall be by ballot, each voter being required to deliver his own vote by person" and that "[e]ach ticket shall be numbered and the number placed opposite the name of the voter[.]" Section 1142, C.L. 1884.

**{12}** In 1891, the Territorial Legislature passed an enactment that provided additional, specific guidance regarding ballots. 1891 N.M. Laws, ch. 85, § 2. The enactment mandated that

> all tickets or ballots used at any general election held in this Territory shall be printed on plain white paper, three inches in width and eight inches in length, or within one quarter of an inch of that size. No such ticket or ballot shall have any mark or number or designating device on the back so that its character may be known when folded.

*Id.* This enactment appeared in the 1897 Compilation of the Territorial Laws. Section 1634, C.L. 1897. As before, the 1897 compilation also included the provision authorizing the Governor to prepare the "proper forms" for elections. Section 1673, C.L. 1897.

**{13}** By the time of the 1915 compilation (after New Mexico had become a state), the provision authorizing the Governor to "prepare proper forms" was no more. Our Legislature expanded its treatment and control over ballots considerably. Ballots were now addressed in several different articles and sections within a chapter of our laws dedicated entirely to elections. *See generally* §§ 1976-2080, C.L. 1915. Each section included a heading generally stating that section's purpose.

**{14}** One section, entitled "Ballots—How furnished—Form[,]" specified that "[e]very ballot printed under the provision of this article shall be headed by the name and emblem of the political party by whom the candidates whose names appear on the ballots were nominated, and each of said ballots shall contain only the names of the candidates nominated by said party." *Id.* § 1993. Another section entitled "Ballots—Size—Contents—False headings, etc." restated the requirements that ballots "be printed on plain white paper, three inches in width and eight inches

in length, or within one quarter of an inch of that size." *Id.* § 1994. Two other sections entitled "Candidates—Filing list—Names on ballots" and "Emblem" addressed the supremacy of the official ballot and gave instructions as to how the emblems of political parties were to be submitted. *Id.* §§ 1995, 1996.

**{15}** In 1927, a comprehensive set of provisions expressly designated as an "Election Code" was passed for the first time. 1927 N.M. Laws, ch. 41, §§ 101-321. The 1927 Election Code significantly increased legislative control over the ballot. Provisions within that code specified that ballots must be printed on "good quality of plain white paper, and all printing thereon shall be in black ink." *Id.* § 306(1). The code also specified the font types for the ballot: "nonpareil caps" for the varying offices at stake in the election and a font "not smaller than brevier nor larger than small pica caps" for candidate names. *Id.* § 306(4). Most crucially, the code expressly embraced straight-ticket voting as a ballot option, incorporated a ballot-design scheme predicated upon the availability of the option, and included instructions for voters specifying how the option could be utilized. *Id.* §§ 306, 311.

**{16}** Section 306 of The 1927 Election Code specified that "[t]he names of all candidates of any party shall be printed on the ballot in the column under the party name and emblem of such party." *Id.* § 306(3). It further specified that the ballot must include "a circle three-fourths of an inch in diameter under the emblem of each party and a one-quarter inch square opposite and to the right of the name of each candidate." *Id.* § 306(4). A pictorial representation of a sample ballot— showing how these symbols should appear—was included at Section 306(9). *See* app. A, fig. 1. Voting instructions prepared by the Legislature and included in The 1927 Election Code made clear to voters that marking the circle, the square, or both had consequence. *See* 1927 N.M. Laws, ch. 41, §§ 306, 311, 312; *see also* app. A, fig. 2.

**{17}** One set of instructions to be printed on the back of each ballot, instructed voters as follows:

> Mark with pen and ink or indelible pencil a cross in the ○ under the party name and emblem of the party for all or most of whose candidates you wish to vote, and if you wish to vote for any candidate other than a candidate whose name appears in the column under such ○ mark a cross in the first □ to the right of the name of the candidate in any other column for whom you wish to vote. . . . If you do not wish to make a cross in any circle you may make a cross in the first □ to the right of the name of each candidate or person for whom you wish to vote.

*Id.* § 306(9); *see also id.* § 312 (stating how "Electors shall vote" and providing a similar account of how the straight-ticket option could be utilized).

**{18}** A second set of instructions were to be printed by the Secretary and delivered to county clerks who were in turn directed to hang the instructions in voting booths and "elsewhere in or about the polling place." *Id.* § 311. These instructions differed only slightly from those that were to appear on the back of ballots and included the following description of how voters could exercise the straight-ticket option: "If you wish to vote a straight party ticket, make a cross in the circle under the party name and emblem of such party, and your vote will be considered as cast for every candidate named under such party name." *Id.* The second set of instructions went on to specify

how a voter could exercise the straight-ticket option and also simultaneously vote for candidates of another party.

> 4.      If you wish to vote a straight party ticket with the exception of one or more of the candidates of said party you may make a cross in the ○ under the party name and emblem of such party, and then make a cross in the first □ to the right of the name of the candidate in any other column for whom you wish to vote[.]

*Id.* Finally, the second set of instructions explained how a voter could decline to utilize the straight-ticket option: "If you do not make a cross in the ○ under any party emblem you may then make a cross in the first □ to the right of the name of each candidate for whom you wish to vote[.]" *Id.*

**{19}**      The 1927 Election Code also referred to straight-ticket voting in provisions addressing how election judges should count votes. *Id.* §§ 314, 319. These provisions suggested the following method:

> 22.      The election judges and clerks may use any practical method for counting and tallying the ballots. The following method is recommended as best calculated to facilitate said counting and tallying:
> Upon opening the ballot box, the judges of election shall first unfold all of the ballots and place them in separate piles as follows:
> Straight Republican; Straight Democrat; Scratched ballots with cross in the circle under the Republican emblem; Scratched ballots with cross in the circle under the Democratic emblem; and in a fifth pile place all other scratched ballots. Then count the Straight Republican ballots and enter the number so counted on the first line of the first tally sheet in the poll book in which they are tallying the vote. This number should be written in the column under the name of each of the Republican candidates on the first line. When the Straight Republican ballots have been counted, tie them into a separate package and keep them in a safe place.
> In the same way, enter on the first line of the tally sheet the number of Straight Democratic ballots in the column under the name of each of the Democratic candidates. Then tie these ballots into a package with the ballots already counted.

*Id.* § 319.

**{20}**      The 1927 Election Code was compiled at Chapter 41 in the 1929 Compilation, at Chapter 56 in the 1941 Compilation, and at Chapter 3 in the 1953 Compilation. The 1927 Election Code eventually became simply the "Election Code." NMSA 1941, §§ 56-101 (1942). Each compilation—1929, 1941, and 1953—includes the straight-ticket-voting provisions discussed. NMSA 1953, §§ 3-3-7, -12, -13, -20 (1953); NMSA 1941, §§ 56-306, -312, -313 (1941); NMSA 1929, § 41-306 (1929). No meaningful changes were made to those provisions until 1969.

**{21}**      In 1969, our Legislature repealed Article 3 of the Election Code, the section that included the provisions dealing with straight-ticket voting. 1969 N.M. Laws, ch. 240, § 451. Simultaneously, the Legislature enacted a new Article 12 which included a section addressing the

"Marking" of the "Paper Ballot." 1969 N.M. Laws, ch. 240, § 255. One provision within that article specified that

> The voter in preparing a paper ballot in a general election shall:
>
> A. if he wishes to vote a straight party ticket, mark a cross (X) in the circle beneath the name of the party and his vote shall be considered as having been cast for every candidate named on the ticket of that party on the ballot, unless he also votes for one or more candidates in some other column or for some person whose name is not printed on the ballot[.]

1969 N.M. Laws, ch. 240, § 255(A). Subsections (B) and (C) explained how a voter could utilize the straight-ticket option and still vote for candidates in the party for which he did not wish to vote straight ticket and how the voter could decline to utilize the straight-ticket option. 1969 N.M. Laws, ch. 240, § 255(B), (C). This provision was codified at NMSA 1953, Section 3-12-19 (1969 Pocket Supp.).

**{22}** In the wake of the 1969 amendments to the Election Code, Section 3-12-19 was the only provision addressing straight-ticket voting in general elections that remained within the article of the Election Code entitled "Conduct of Elections," the article where provisions authorizing straight-ticket voting in general elections had always been placed. The voting instructions and the provision explaining how election judges should count votes—both of which included express references to straight-ticket voting—were gone.

**{23}** In 1977, Section 3-12-19 was repealed along with several other provisions within Chapter 3, Article 12 of the Election Code. 1977 N.M. Laws, ch. 222, § 103. Following the repeal of Section 3-12-19, the Election Code no longer included a provision expressly authorizing straight-ticket voting in general elections.

**{24}** Despite the absence of a provision expressly authorizing straight-ticket voting in general elections, legislators made six attempts to prohibit straight-ticket voting as a ballot option in general elections between 2001 and 2007. S.B. 52, 48th Leg., 1st Sess. (N.M. 2007); S.B. 106, 47th Leg., 1st Sess. (N.M. 2005); S.B. 837, 46th Leg., 1st Sess. (N.M. 2003); S.B. 147, 46th Leg., 1st Sess. (N.M. 2003); S.B. 293, 45th Leg., 1st Sess. (N.M. 2001); S.B. 183, 45th Leg., 1st Sess. (N.M. 2001). None of these bills passed.

**{25}** In 2008, the Secretary of State's office created regulations governing how ballots with inconsistent markings shall be counted in the event of an election recount. 1.10.23.12 NMAC (11/03/2008). These regulations operate from the presumption that straight-ticket voting is a lawfully permitted feature in general elections. The regulations state, among other things, that a straight-ticket vote for both parties shall be treated as an invalid vote, 1.10.23.12(I) NMAC, and a straight-ticket vote for both parties and then also for an individual candidate shall be treated as a vote for the individual candidate. *Id.* These regulations remain in the New Mexico Administrative Code today.

**{26}** Between 2011 and 2013, legislators three times attempted to mandate that the straight-ticket option be available to voters in general elections. *See* S.B. 276, 51st Leg., 1st Sess. (N.M. 2013); S.B. 218, 50th Leg., 2nd Sess. (N.M. 2012); S.B. 582, 50th Leg., 1st Sess. (N.M. 2011). None of these bills passed.

## 2. Straight-ticket voting and emergency paper ballots

**{27}** The same year our Legislature repealed the provision expressly authorizing straight-ticket voting in general elections (1977), it enacted a provision that explained to voters utilizing "emergency paper ballot[s]" how they could exercise the straight-ticket option. 1977 N.M. Laws, ch. 222, § 56. Emergency-paper-ballot voters were instructed to "mark a cross (X) in the circle beneath the name of the party . . . ." *Id.* Doing so ensured that their "vote shall be considered as having been cast for every candidate named on the ticket of that party on the ballot[.]" *Id.* These instructions mirrored those given to all voters during the time that straight-ticket voting was authorized in general elections.

**{28}** This enactment concerning straight-ticket voting and emergency ballots was compiled at NMSA 1953, Section 3-12-87 (1976-77 Interim Supp.). In 1978, Section 3-12-87 was recompiled as Section 1-12-53. *See* Parallel Table. In 1979, the Legislature amended Section 1-12-53 to permit voters utilizing emergency paper ballots to "mark" their ballot with a "check ( )" as an alternative to the "cross (X)" beneath the party name for which the voter wished to cast a straight-ticket vote. 1979 N.M. Laws, ch. 57, § 3. In 2005, several bills were proposed to eliminate the straight-ticket option on the emergency ballot. *See* S.B. 106, 47th Leg., 1st Sess. (N.M. 2005); S.B. 678, 680, 718 & 735, 47th Leg., 1st Sess. (N.M. 2005); H.B. 362, 47th Leg., 1st Sess. (N.M. 2005); H.B. 1063, 47th Leg., 1st Sess. (N.M. 2005); H.B. 1064, 47th Leg., 1st Sess. (N.M. 2005). These efforts were successful and the straight-ticket option was removed from Section 1-12-53. 2005 N.M. Laws, ch. 270, § 74. After 2005, Section 1-12-53 provided only that "[t]he voter in preparing an emergency paper ballot in a general election shall mark the ballot in accordance with the instructions for that ballot type." NMSA 1978, § 1-12-53 (2005). In 2009, Section 1-12-53 was repealed altogether. 2009 N.M. Laws, ch. 150, § 37.

## 3. Straight-ticket voting and voting machines

**{29}** In 1951, the Legislature passed a multi-section enactment permitting the use of voting machines. 1951 N.M. Laws, ch. 192, §§ 1-24. The first section of this enactment directed the Secretary to form a committee with four individuals appointed by the Governor to "study, examine and approve voting machines for use in the State of New Mexico." 1951 N.M. Laws, ch. 192, § 1. The act also included a section addressing the required specifications for voting machines. *Id.* § 2. It specified that "[n]o voting machine shall be approved by the committee unless it shall satisfy" a list of specific criteria designated as Subsections (a) through (h). *Id.* Subsection (h) specified that the machine had to "permit each voter, at other than primary elections, to vote a straight party ticket in one operation, and, in one operation, to vote for all the candidates of one party for presidential electors." *Id.* § 2(h). The machine voting enactment was subsequently codified at NMSA 1953, Sections 3-4-1 to -25 (1951) and the provision requiring voting machines to have straight-ticket capability appeared at Section 3-4-2(h) (1951).

**{30}**     In 1969, Sections 3-4-1 to -25 were repealed.  1969 N.M. Laws, ch. 240, § 451.  Our Legislature simultaneously enacted a new version of the voting machine act at Sections 3-9-1 to -13. 1969 N.M. Laws, ch. 240, §§ 187-195; *see* NMSA 1953, §§ 3-9-1 to -13 (1969).  Section 3-4-2(h) (requiring voting machines to have straight-ticket capability) now appeared at Section 3-9-5(H).  1969 N.M. Laws, ch. 240, § 187; *see also* NMSA 1953, § 3-9-5(H) (1969).

**{31}**     In 1976, the authority to approve voting machines was given to the "[S]ecretary of [S]tate." 1976 N.M. Laws, ch. 5, § 4; NMSA 1953, § 3-9-5 (1976).  In 1978, Section 3-9-5 was recompiled as Section 1-9-4. NMSA 1978, § 1-9-4 (1978).  In 1991, the Legislature specified that the "machine" contemplated by the voting machine act was a "lever-type voting machine."  1991 N.M. Laws, ch. 106, § 1.  In the wake of all these changes, Section 1-9-4(H) provided that "[n]o lever-type voting machine shall be approved by the secretary of state unless: . . . H.  it permits each voter, at other than primary elections, to vote a straight party ticket in one operation[.]" NMSA 1978, § 1-9-4 (1991).  In 2001, Section 1-9-4 was repealed along with several other provisions dealing with voting machines, 2001 N.M. Laws, ch. 233, § 16, thus removing any reference to straight-ticket voting from the voting machine act.

**{32}**     In the same 2001 bill repealing Section 1-9-4, the Legislature passed enactments ushering in the era of "voting systems."  *See generally* 2001 N.M. Laws, ch. 233, §§ 1-15.  Voting systems are "a combination of mechanical, electromechanical or electronic equipment, including the software and firmware required to program and control the equipment, that is used to cast and count votes[.]" 2001 N.M. Laws, ch. 233, § 1(B).  The Legislature crafted a set of "standards" voting systems must meet. *Id.* §§ 10-11.  Straight-ticket capability was not one of those standards. In 2006, the Legislature passed enactments requiring all precincts in New Mexico to utilize "voting systems," and requiring those voting systems to "use a paper ballot on which the voter physically or electronically marks the voters' choices on the ballot itself[.]" 2006 N.M. Laws, ch. 43, §§ 1-2. And with this, our election laws came full circle in some sense.

## 4.     Analysis of This History

**{33}**     For the fifty years between 1927 and 1977, our Legislature not only expressly approved straight-ticket voting in general elections but, for the bulk of this time, gave exceedingly specific instructions about how voters could vote straight ticket.  The 1977 repeal of the law expressly authorizing straight-ticket voting in general elections, as well as the disappearance of the voting instructions and the instructions to the election judges expressly referring to straight-ticket voting, cannot be overstated.

**{34}**     The provisions that continued after 1977 and that referred to straight-ticket voting did not clearly state that straight-ticket voting was authorized in general elections, as had been the case for the past half century.  Rather, these provisions only made straight-ticket voting available for emergency-ballot voters and mandated that voting machines have straight-ticket voting capability. These provisions do not have the same clarity or functional significance of the former statutes that so clearly mandated that straight-ticket voting be an option in general elections.  The straight-ticket provisions in the machine voting and emergency ballot context were repealed in 2001 (voting machines) and 2005 (emergency ballots), after which legislators attempted both to prohibit and reinstate straight-ticket voting in general elections. *Supra*, ¶¶ 24, 26.  It is entirely unclear what

authority served as the basis for the Secretary's 2008 regulations which appear to assume that straight-ticket voting continued to be a ballot option in general elections despite the fact that, as of 2005, straight-ticket voting was no longer a feature of any kind in our election laws.

{35}    In sum, we see nothing in this history that suggests that our Legislature ever intended to give authority to the Secretary to decide whether straight-ticket voting shall be an option to voters in general elections.  To the contrary, this history indicates that our Legislature understands that it alone possesses authority to decide whether and under what circumstances straight-ticket voting should be available in general elections.  Nothing in the text or history of Section 1-10-12(F) causes us to doubt this conclusion.

## C.    Section 1-10-12(F)

{36}    Section 1-10-12, entitled "Paper ballots; general requirements[,]" states that

> Paper ballots shall:
>     A.    Be numbered consecutively;
>     B.    Be uniform in size;
>     C.    Be printed on good quality white paper;
>     D.    Be printed in plain black type;
>     E.    Have the precinct numbers printed on each paper ballot; and
>     F.    Be in the form prescribed by the secretary of state.

The origin of this provision can be traced back to 1891 when the Territorial Legislature first specified that ballots be printed on "plain white paper" and be a certain uniform size.  1891 N.M. Laws, ch. 85, § 2.  The source of the specific language utilized by our Legislature in Section 1-10-12 can be traced to two separate statutes: NMSA 1953, Section 3-10-7 (1969) and NMSA 1953, Section 3-10-10 (1969).  *See* 1969 N.M. Laws, ch. 240, §§ 202, 205.

{37}    Section 3-10-7 was entitled "Ballots—Paper—General requirements" and provided as follows:

> Paper ballots used in the primary and general elections shall:
>
>     A.    Be numbered consecutively for each precinct beginning with number one.  The number shall be printed in the upper right-hand corner of the ballot with a diagonal perforated line so placed that the portion of the ballot bearing the number in the upper right-hand corner may be readily and easily detached from the paper ballot;
>     B.    Be uniform in size;
>     C.    Be printed on good quality white paper;
>     D.    Be printed in plain black type;
>     E.    Have all words and phrases, except the names of the candidates, printed in their proper place; and
>     F.    Have the precinct number printed on each ballot.

Section 3-10-7 (1969) and Section 1-10-12 (2009) differ only slightly: Section 3-10-7(A) was more specific than Section 1-10-12(A); Section 3-10-7(E) was not carried over into Section 1-10-12; Section 3-10-7(F) exists at Section 1-10-12(E); and Section 3-10-7 did not include the language "be in the form prescribed by the secretary of state" as in Section 1-10-12(F) . This "form prescribed" language came from Section 3-10-10.

{38}    Section 3-10-10 was entitled "Ballots—Paper—Form for general election." It stated that "[p]aper ballots used in the general election shall be in the form prescribed by the [S]ecretary of [S]tate and shall conform to" four requirements none of which need be discussed in any detail here. Section 3-10-10 (1969).

{39}    Both Sections 3-10-7 and 3-10-10 were repealed in 1977 along with many other sections of Chapter 3, Article 10 governing "Ballots and Ballot Labels." 1977 N.M. Laws, ch. 222, § 103. Simultaneously, the Legislature enacted a new Section 3-12-78 entitled "Emergency Situations—Emergency Paper Ballots—General Requirements[,]" 1977 N.M. Laws, ch. 222, § 47; *see* NMSA 1953, § 3-12-78 (1977), and a new Section 3-12-80 entitled "Emergency Situations—Emergency Paper Ballots—Form for General Election." 1977 N.M. Laws, ch. 222, § 49; *see* NMSA 1953, § 3-12-80 (1977). Section 3-12-78 (1977) was nearly identical to Section 3-10-7 (1969) except that Section 3-12-78 applied to "emergency paper ballots." Section 3-12-80 (1977) was nearly identical to Section 3-10-10 (1969) except that it too applied to "emergency paper ballots."

{40}    In 1978, Section 3-12-78 was recompiled as Section 1-12-44 and Section 3-12-80 was recompiled as Section 1-12-46. In 2009, Section 1-12-44 was amended and recompiled as the present Section 1-10-12. 2009 N.M. Laws, ch. 150, § 10. Simultaneously and in the same bill, Section 1-12-46 was repealed. 2009 N.M. Laws, ch. 150, § 37.

{41}    As a consequence of the 2009 amendments, Section 1-10-12 no longer governed or addressed emergency ballots. It concerned paper ballots and included the language as we know it today. In effect, the provision reverted to the purpose it originally had in 1969 with an essential added feature: it specified that paper ballots shall "be in the form prescribed by the secretary of state." NMSA 1978, § 1-10-12 (2009).

{42}    This history does not suggest, as the Secretary argues, that our Legislature meant to empower her to decide whether straight-ticket voting shall be available to voters in general elections when it gave her the authority to prescribe the form of the ballot. Since 1927, our Election Code has addressed whether and under what circumstances straight-ticket voting shall be available to voters in general elections in an article of our Election Code initially entitled the "Calling and Conduct of Elections" and later simply the "Conduct of Elections." 1927 N.M. Laws, ch. 41, §§ 302-21 (Calling and Conduct of Elections); NMSA 1929, §§ 41-301 to -360 (1929) (same); NMSA 1941, §§ 56-301 to -362 (1941) (same); NMSA 1953, §§ 3-31 to -40 (1953) (same); NMSA 1953, §§ 3-12-1 to -16 (1969) (Conduct of Elections). The statutes that would eventually become Section 1-10-12 were originally codified at Article 10, an article addressing "Ballots and Ballot Labels." NMSA 1953, § 3-10-1 to -15 (1969). As the statutes that would later become Section 1-10-12 came into existence at a time when a section in an entirely different article provided for straight-ticket voting in general elections, we can deduce that the origins of Section 1-10-12 had nothing whatsoever to do with straight-ticket voting. *See* Norman J. Singer and J.D. Shambie

Singer, 1A *Sutherland Statutes and Statutory Construction*, § 28.11, at 637 (7th ed. 2009) ("[I]n the construction of a particular code section, attention should be given to the entire chapter, or even the entire code, to determine the purpose and objective of the [L]egislature in organizing the material. Under some circumstances the placement or rearrangement of code sections may be helpful to determine proper construction of the statute." (footnotes omitted)).

**{43}** It is true that from 1977 until 2009 the emergency ballot iterations of Section 1-10-12 were codified within the Conduct of Elections article. But after 2009, Section 1-10-12 once again moved back to Article 10 of the Election Code. The significance of this move—out of and away from the article where the statutes authorizing straight-ticket voting in general elections were generally housed—suggests that Section 1-10-12 is not a provision that was ever intended to authorize the Secretary to decide questions relating to straight-ticket voting. We are assured of the correctness of this conclusion by a plain language analysis of Section 1-10-12.

**{44}** Section 1-10-12(F)'s directive that the ballot "be in the form prescribed by the secretary" is preceded by Subsections (A) through (E). The nature of Subsections (A) through (E) give us insight into the meaning of Subsection (F). *See* NMSA 1978, § 12-2A-20(A)(2) (1997) ("[T]he meaning of a general word or phrase following two or more specific words or phrases may be limited to the category established by the specific words or phrases."); *State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 29, 285 P.3d 622 ("The rule of *ejusdem generis* requires, that where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." (internal quotation marks and citation omitted)).

**{45}** Subsections (A) through (E) state that ballots shall be numbered, shall be uniform in size, shall be printed on quality white paper, shall be printed in plain black type, and shall have precinct numbers printed upon them. Section 1-10-12(A)-(E). These provisions all address the technical formatting of ballots. This indicates that the term "form" in Section 1-10-12(F) is correctly construed as delegating to the Secretary authority only over the technical aspects of ballots. This is a limited power as many of the technical, formatting aspects of the ballot are specified by statute. *See generally* NMSA 1978, §§ 1-10-1 to -14 (1969, as amended through 2017). As we noted earlier in this opinion, whether straight-ticket voting shall be an option on ballots in general elections is not a technical formatting question. It is a question of significant substance over which Section 1-10-12 gives the Secretary no authority.

## II.   CONCLUSION

**{46}** Our Legislature cannot delegate to the Secretary unfettered authority to decide whether the straight-ticket option shall appear on ballots in the general election. The history of straight-ticket voting in general elections in New Mexico shows that the Legislature never delegated or attempted to delegate this authority to the Secretary. This conclusion is hardly surprising given the fact that whether straight-ticket voting shall be a ballot option in a general election is a meaningful policy question and not a mere technical, ballot-formatting matter. Our review of the history of straight-ticket voting also reveals that our Legislature removed any reference to straight-ticket voting in our Election Code. This can only be interpreted as a decision to remove the option from the ballot.

**{47}** The petition is granted and the writ of mandamus issued.

**{48}** **IT IS SO ORDERED.**

                                 _____

                                 **JUDITH K. NAKAMURA, Chief Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Justice**

_____
**PETRA JIMENEZ MAES, Justice, Retired**
**Sitting by designation**

_____
**CHARLES W. DANIELS, Justice, Retired**
**Sitting by designation**

_____
**BRETT R. LOVELESS, Judge**
**Sitting by designation**

# Appendix A

## Figure 1
### 1927 N.M. Laws, ch. 41, § 306(9)

REPUBLICAN TICKET
(Emblem)
O
PRESIDENTIAL ELECTORS

A. B. .................................... ☐
C. D. .................................... ☐
E. F. .................................... ☐
.................................... ☐
.................................... ☐
.................................... ☐

UNITED STATES SENATOR

A. B .................................... ☐
.................................... ☐

DEMOCRATIC TICKET
(Emblem)
O
PRESIDENTIAL ELECTORS

G. H .................................... ☐
I. J. .................................... ☐
K. L. .................................... ☐
.................................... ☐
.................................... ☐
.................................... ☐

UNITED STATES SENATOR

C. D. .................................... ☐
.................................... ☐

(Emblem)
O

M. N. .................................... ☐
O. P. .................................... ☐
Q. R. .................................... ☐
.................................... ☐
.................................... ☐
.................................... ☐

UNITED STATES SENATOR

E. F. .................................... ☐
.................................... ☐

## Figure 2
### 1927 N.M. Laws, ch. 41, §311

"INSTRUCTIONS TO VOTERS

1. After receiving your ballot, go directly into a booth.

2. You can vote only by making a cross with pen and ink or indelible pencil on the ballot in a circle or in a circle and in one or more squares. Such cross shall consist of two lines intersecting within the circle or in the square.

3. If you wish to vote a straight party ticket, make a cross in the circle under the party name and emblem of such party, and your vote will be considered as cast for every candidate named under such party name.

4. If you wish to vote a straight party ticket with the exception of one or more of the candidates of said party you may make a cross in the O under the party name and emblem of such party, and then make a cross in the first ☐ to the right of the name of the candidate in any other column for whom you wish to vote; or you may write in the name of any person not on any ticket and make a cross in the first ☐ to the right of such name.

5. If you do not make a cross in the O under any party emblem you may then make a cross in the first ☐ to the right of the name of each candidate for whom you wish to vote, and you may write in the name of any person not on any ticket on the blank line under the designation of the office for which you wish to vote for him and make a cross in the first ☐ to the right of such name.

6. If you wish to vote for a person whose name is not printed on the ballot, write his name on the blank line under the designation of the office in any column and make a cross in the first ☐ to the right of the name that you write in.

7. When the names of two or more candidates for representative in the legislature from one representative district are printed on the ballot in a group under the designation of the office, if you desire to vote other than a straight party ticket for such candidates you may mark a cross in the square immediately to the right of the name of each candidate for such office for whom you desire to vote.

If you vote for more candidates than the number of representatives such district is entitled to, your ballot will not be counted for any candidate for said office.

8. If you spoil or mutilate your ballot, return it to the judges and secure another ballot.

9. After you have marked your ballot, examine it and be sure it is marked as you wish. Fold your ballot in such manner that the number printed on the upper right hand corner shall appear on the outside fold, without displaying any of the marks on the face of the ballot.

10. Do not show your ballot to anyone after it is marked.

11. Hand your folded ballot to one of the judges of election. Be sure that he detaches the exposed number thereon and that he deposits the ballot in the box. [L. '27, Ch. 41, § 311.