CHRISTOPHER A. CLARK *v.* TOWN OF WATERFORD,
COHANZIE FIRE DEPARTMENT ET AL.
(SC 20630)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Alexander, Js.*

*Syllabus*

Pursuant to statute (§ 7-433c (a)), "a uniformed member of a paid municipal
fire department," who successfully passed a physical examination that
failed to reveal any evidence of hypertension or heart disease before
beginning such employment and then subsequently suffered any condi-
tion or impairment of health caused by hypertension or heart disease
resulting in his disability, is entitled to "receive from his municipal
employer compensation and medical care in the same amount and the
same manner as that provided under [the Workers' Compensation Act]
. . . from the municipal or state retirement system under which he is
covered . . . . [These] benefits . . . shall be in lieu of any other bene-
fits which such . . . fireman . . . may be entitled to receive from his
municipal employer under the provisions of [the Workers' Compensation
Act] or the municipal or state retirement system under which he is
covered . . . ."

Pursuant further to statute (§ 7-433c (b)), "those persons who began employ-
ment on or after July 1, 1996, shall not be eligible for [heart and hyperten-
sion] benefits" under § 7-433c (a).

Pursuant further to statute (§ 7-425 (5)), "except as otherwise provided,"
the word "member," as used in part II of chapter 113 (title 7) of the
General Statutes, "means any regular employee . . . receiving pay from
a participating municipality . . . who has been included by such munici-
pality in the pension plan as provided in section 7-427, but shall not
include any person who customarily works less than twenty hours a
week . . . ."

The named defendant, the town of Waterford, Cohanzie Fire Department,
appealed from the decision of the Compensation Review Board, which
upheld the workers' compensation commissioner's decision that the
plaintiff's claim for heart and hypertension benefits was compensable
under § 7-433c (a). The town originally hired the plaintiff as a part-time
firefighter in 1992, prior to which he passed a physical examination that
revealed no evidence of heart disease or hypertension. In 1997, the town

---

* This case originally was scheduled to be argued before a panel of this
court consisting of Chief Justice Robinson and Justices McDonald, D'Auria,
Mullins, Ecker and Alexander. Although Chief Justice Robinson was not
present at oral argument, he has read the briefs and appendices, and listened
to a recording of the oral argument prior to participating in this decision.

Clark *v.* Waterford, Cohanzie Fire Dept.

hired the plaintiff as a full-time firefighter, and, in 2017, he suffered a myocardial infarction and underwent quadruple bypass surgery. The plaintiff then filed a claim under § 7-433c seeking compensation for his heart disease, which the town contested as noncompensable on the ground that the plaintiff had not been employed as a full-time firefighter until 1997 and, therefore, did not qualify for benefits in light of § 7-433c (b). At a hearing before the commissioner, the plaintiff testified that, while employed as a part-time firefighter, he worked assigned shifts, and the number of shifts he was assigned to work was irregular, but he did not indicate the number of hours he customarily worked. The town reasoned that benefits under § 7-433c are available only to a "uniformed member of a paid municipal fire department" hired prior to July 1, 1996, the term "member" in § 7-433c is controlled by the definition of that term in § 7-425 (5), which excludes persons who customarily work less than twenty hours per week, and, because the plaintiff failed to establish that he customarily worked twenty hours or more per week when he was employed as a part-time firefighter, he was not eligible for benefits. The commissioner rejected the town's claim and ordered it to accept the plaintiff's myocardial infarction as compensable. In doing so, the commissioner made no finding as to the number of hours the plaintiff worked per week as a part-time firefighter. Instead, the commissioner noted that § 7-433c does not define the phrase "uniformed member of a paid municipal fire department" or distinguish between part-time and full-time employment and applied the common definition of the word "member" to conclude that the plaintiff's date of employment was in 1992 and that he therefore was entitled to benefits. The board upheld the commissioner's award of benefits, and the town appealed to the Appellate Court, which affirmed the board's decision. The Appellate Court observed that, although §§ 7-425 (5) and 7-433c are both contained within part II of chapter 113 of the General Statutes, they do not concern the same subject matter and could not be read together without reaching an absurd result, insofar as § 7-425 (5) defines terms related to the governance of the voluntary public pension plan provided by the state for participating municipalities and their employees and elected officials, including the term "member," which is defined therein as a regular employee who receives pay from a municipality that participates in that state retirement fund, whereas § 7-433c (a) mandates that municipal employers pay heart disease and hypertension benefits to qualified uniformed members of paid municipal fire departments, regardless of whether the municipality participates in the state retirement fund. The Appellate Court also concluded that the town's interpretation would lead to the absurd result that benefits under § 7-433c are available only to uniformed firefighters employed and paid by municipalities that participate in the state retirement fund. On the granting of certification, the town appealed to this court.

Clark *v.* Waterford, Cohanzie Fire Dept.

*Held* that the Appellate Court incorrectly determined that the definition of "member" in § 7-425 (5) does not affect eligibility for heart and hypertension benefits under § 7-433c, and, accordingly, this court reversed the judgment of the Appellate Court:

When considered in context, the language of §§ 7-425 (5) and 7-433c compelled the conclusion that the meaning of the word "member" in § 7-433c was controlled by the definition set forth in § 7-425 (5), especially in view of the relationship between § 7-433c and other statutes, the principle of statutory interpretation that the legislature, in amending or enacting statutes, is presumed to have created a harmonious and consistent body of law, and the absence of legislative history squarely supporting the proposition that the legislature did not intend the definition of "member" in § 7-425 (5) to apply to § 7-433c.

Section 7-425 clearly and unambiguously provides that, "except as otherwise provided," it governs the meanings of the statutes in part II of chapter 113 (title 7) of the General Statutes, that is the part of the General Statutes that provides for the establishment of the state retirement fund, tenets of statutory interpretation required this court to presume that the legislature acted consciously when it codified § 7-433c with the governing definitions in that part of the General Statutes, and, in view of the logical and factual relationship between heart and hypertension benefits and retirement benefits, as expressly and repeatedly recognized by the text of § 7-433c (a), this court assumed that the placement of § 7-433c was intentional, particularly when there were other logically suitable places in the General Statutes where that statute could have been codified, such as within the related provisions of the Workers' Compensation Act.

Moreover, because the legislature specifically defined the operative term "member" in § 7-425 (5), this court was bound to accept that definition unless it would create an irrational result that the legislature could not have intended.

Furthermore, insofar as the legislature expressly provided in § 7-433c for an independent definition of a different term, specifically that "municipal employer," as used in § 7-433c, would be defined by another statute (§ 7-467), it was evident that, if the legislature had desired to incorporate a different definition of "member" for purposes of heart and hypertension benefits eligibility, it could have done so, and, similarly, if the legislature had desired to provide more flexibility with respect to the eligibility for such benefits under § 7-433c, it could have done so by using broader terminology, such as "firefighter" instead of "a uniformed member of a paid municipal fire department," or, alternatively, more flexible phrasing in the definitions, as it did when it added the qualifier, "unless the context otherwise provides," in the context of the definitions applicable to the workers' compensation statutes.

Clark *v.* Waterford, Cohanzie Fire Dept.

Although the plaintiff, as a part-time firefighter, performed the same tasks as full-time firefighters, similarity in job function did not require the town to pay its part-time firefighters benefits under § 7-433c, as the terminology that the legislature used to describe the officials who are eligible for benefits under § 7-433c was controlling, notwithstanding the similarity in the officers' respective job functions, this court disagreed with the plaintiff's claim and the Appellate Court's conclusion that applying the definition of "member" in § 7-425 (5) to § 7-433c necessarily would lead to an absurd result insofar as only those firefighters whose municipal employers have elected to participate in the state retirement fund can qualify for benefits under § 7-433c, and, to the extent that this court's construction of the plain and unambiguous statutory text of §§ 7-425 (5) and 7-433c could lead to results unintended by the legislature, that was not a reason to depart from the plain and unambiguous statutory text, as the legislature was free to clarify the meaning of § 7-433c if it desired to make it plain that any paid firefighter is eligible for benefits under that statute.

Because the commissioner did not apply the correct legal standard in failing to make a finding as to whether the plaintiff had customarily worked twenty hours or more per week before being hired as a full-time firefighter, the plaintiff was entitled to have the commissioner decide that factual issue, and, accordingly, the case was remanded for further proceedings.

(*One justice dissenting*)

Argued November 17, 2022—officially released June 20, 2023

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Second District finding that the plaintiff had sustained a compensable injury and awarding certain disability benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the named defendant appealed to the Appellate Court, *Bright, C. J.*, and *Moll* and *Clark, Js.*, which affirmed the decision of the Compensation Review Board, and the named defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*.

*Kyle J. Zrenda*, with whom was *James P. Berryman*, for the appellant (named defendant).

*Eric W. Chester*, for the appellee (plaintiff).

346 Conn. 711 JUNE, 2023 715

Clark *v.* Waterford, Cohanzie Fire Dept.

*Opinion*

ROBINSON, C. J. The sole issue in this certified appeal is whether a uniformed firefighter must "customarily" work twenty hours or more per week to be eligible for heart and hypertension benefits under General Statutes § 7-433c.[1] The named defendant, the town of Waterford, Cohanzie Fire Department (town),[2] appeals, upon our

[1] General Statutes § 7-433c provides: "(a) Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event *a uniformed member of a paid municipal fire department* or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, 'municipal employer' has the same meaning as provided in section 7-467.

"(b) Notwithstanding the provisions of subsection (a) of this section, those persons who began employment on or after July 1, 1996, shall not be eligible for any benefits pursuant to this section." (Emphasis added.)

[2] As the Appellate Court observed, the "defendant Connecticut Interlocal Risk Management Agency appeared before the commissioner but did not

Clark *v.* Waterford, Cohanzie Fire Dept.

grant of its petition for certification,[3] from the judgment
of the Appellate Court affirming the decision of the
Compensation Review Board (board), which upheld the
finding and award of the Workers' Compensation Com-
missioner for the Second District (commissioner),[4] order-
ing the town to accept as compensable a claim filed by
the plaintiff, Christopher A. Clark, for heart disease
benefits pursuant to § 7-433c. *Clark* v. *Waterford,
Cohanzie Fire Dept.*, 206 Conn. App. 223, 224–25, 243,
261 A.3d 97 (2021). On appeal, the town claims that the
Appellate Court incorrectly concluded that the defini-
tion of "member" in General Statutes § 7-425 (5),[5] which

appear before the board [or] file a brief in the present appeal." *Clark* v.
*Waterford, Cohanzie Fire Dept.*, 206 Conn. App. 223, 224 n.1, 261 A.3d
97 (2021).

[3] We granted the town's petition for certification to appeal, limited to the
following issue: "Did the Appellate Court incorrectly determine that the
definition of the term 'member' in General Statutes § 7-425 (5) is inapplicable
to . . . § 7-433c?" *Clark* v. *Waterford, Cohanzie Fire Dept.*, 338 Conn. 916,
259 A.3d 1181 (2021).

[4] "We note that General Statutes . . . § 31-275d (a) (1), effective as of
October 1, 2021, provides in relevant part that '[w]herever the words "work-
ers' compensation commissioner," "compensation commissioner" or "com-
missioner" are used to denote a workers' compensation commissioner in
[several enumerated] sections of the [G]eneral [S]tatutes, [including sections
contained in the Workers' Compensation Act, § 31-275 et seq.] the words
"administrative law judge" shall be substituted in lieu thereof . . . .'

"As all events underlying this appeal occurred prior to October 1, 2021,
we will refer to the workers' compensation commissioner [whose decisions
are at issue] in this matter as the commissioner . . . ." *Arrico* v. *Board of
Education*, 212 Conn. App. 1, 4 n.4, 274 A.3d 148 (2022).

[5] General Statutes § 7-425 provides in relevant part: "The following words
and phrases as used in this part, except as otherwise provided, shall have
the following meanings:

\* \* \*

"(5) 'Member' means any regular employee or elective officer receiving
pay from a participating municipality . . . who has been included by such
municipality in the pension plan as provided in section 7-427, but shall not
include any person who customarily works less than twenty hours a week
if such person entered employment after September 30, 1969, any police
officer or firefighter who will attain the compulsory retirement age after
less than five years of continuous service in fund B . . . ."

Although § 7-425 was the subject of a technical amendment in 2021; see
Public Acts 2021, No. 21-40, § 4; that amendment has no bearing on the

Clark *v.* Waterford, Cohanzie Fire Dept.

excludes "any person who customarily works less than twenty hours a week if such person entered employment after September 30, 1969," does not govern whether the plaintiff was "a uniformed *member* of a paid municipal fire department" for purposes of § 7-433c. (Emphasis added.) General Statutes § 7-433c (a). We agree with the town and, accordingly, reverse the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history, much of which is aptly set forth in the opinion of the Appellate Court.[6] "The town, a municipality organized under the laws of the state, hired the plaintiff as a part-time firefighter on May 24, 1992. Prior to being hired by the town, the plaintiff underwent and passed a physical examination that revealed no evidence of heart disease or hypertension.

"As a part-time firefighter in Waterford, the plaintiff's responsibilities included answering the telephone at the fire station, keeping the fire station clean, responding to medical and fire emergencies, and maintaining fire apparatus. When he was working, the plaintiff wore a uniform shirt, badge, belt, pants, and black shoes, which is what other firefighters also wore. He was issued fire protective gear in the event he had to respond to a fire call. In 1997, the plaintiff was hired by the town as a full-time firefighter.

"On or about June 24, 2017, the plaintiff suffered a myocardial infarction that required him to undergo quadruple bypass surgery. On August 14, 2017, the plaintiff filed a [f]orm 30C, seeking heart disease benefits under § 7-433c. Pursuant to General Statutes § 31-294c

merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[6] For purposes of brevity, we recite only the most salient facts and procedural history. For a full recitation, including the parties' arguments before the commissioner, the board, and the Appellate Court, see *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 226–36.

Clark *v.* Waterford, Cohanzie Fire Dept.

(b), the town gave notice of its intent to contest the compensability of the plaintiff's claim on the ground that he was not employed as a full-time firefighter until June 18, 1997, and therefore did not qualify for benefits because § 7-433c (b) precludes benefits for persons who began their employment on or after July 1, 1996.

"The commissioner held a formal hearing on the plaintiff's claim on March 7, 2019. The plaintiff testified at the hearing, but he did not testify on direct examination as to the number of hours he customarily worked while he was employed as a part-time firefighter. On cross-examination, however, the plaintiff testified that he worked assigned shifts and that the number of shifts he was assigned varied from week to week. In light of the plaintiff's testimony regarding his other employment and the irregular number of hours he worked per week as a part-time firefighter, the town argued that the plaintiff had failed to establish that he customarily worked twenty hours or more per week prior to July 1, 1996." (Footnote omitted.) *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 226–27.

The town claimed before the commissioner that the plaintiff's failure to establish that he customarily worked twenty hours or more per week prior to July 1, 1996, was fatal to his claim for benefits under § 7-433c. See id., 227. Specifically, the town contended that "§ 7-433c benefits are available only to 'a uniformed *member* of a paid municipal fire department' hired . . . before July 1, 1996, and that the term *member*, as used in § 7-433c, is controlled by the definition set forth in § 7-425 (5)." (Emphasis in original.) Id. "Because *member* under § 7-425 (5) 'shall not include any person who customarily works less than twenty hours per week' and the plaintiff was not hired as a full-time firefighter until June 18, 1997, the town contended that the plaintiff was not entitled to § 7-433c benefits, as 'persons who began employment on or after July 1, 1996, shall not

Clark *v.* Waterford, Cohanzie Fire Dept.

be eligible for any benefits pursuant to this section.' General Statutes § 7-433c (b).'' (Emphasis in original.) *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 227.

In his findings and award, the commissioner did not make a finding as to whether the plaintiff had worked twenty hours or more per week prior to being hired as a full-time firefighter on June 18, 1997.[7] Instead, the "commissioner decreed that § 7-433c does not define the phrase 'uniformed *member* of a paid municipal fire department' or distinguish between part-time and full-time employment status. . . . The commissioner, thus, determined that the plaintiff's date of employment was May 24, 1992, which was prior to July 1, 1996, and that he was entitled to benefits pursuant to § 7-433c. The commissioner ordered the town to accept the plaintiff's June 24, 2017 myocardial infarction as a compensable impairment of his health." (Emphasis in original.) Id., 228.

The town appealed from the decision of the commissioner to the board. Id., 229–30. The board concluded that, although "it [could not] reasonably be inferred from the subordinate facts that the plaintiff worked more than twenty hours per week prior to the time he became a full-time firefighter on June 18, 1997";[8] id.,

---

[7] "In his findings and award, the commissioner found that, while the plaintiff was a part-time firefighter, the number of hours he worked per week was consistent and was affected by the time of year, as well as the vacation, sick time, and any injuries sustained by the full-time staff. Some weeks he was assigned to work multiple shifts, and other weeks he was not assigned to work. As a part-time employee of the town, the plaintiff did not receive any holiday or vacation pay or benefits toward a pension. In 1997, the town employed the plaintiff as a full-time firefighter and paid him accordingly. Part-time and full-time firefighters were paid by the town, and their duties were the same." *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 228.

[8] The board determined that the "evidence demonstrated that the plaintiff was assigned shifts on an irregular basis and that his assignments depended on circumstances that varied according to the time of year and the internal staffing requirements of the [town fire] department and did not provide an

230–31; "applying the § 7-425 (5) definition to the plaintiff's claim would produce a result contrary to the letter and spirit of the heart and hypertension legislation, particularly in light of the plaintiff's long career with the town. The board, therefore, [upheld] the commissioner's award of § 7-433c benefits to the plaintiff and rejected the town's contention that the [commissioner incorrectly had applied] the common definition of the word *member*, rather than the statutory definition set forth in § 7-425 (5) . . . ." (Emphasis in original.) Id., 234. Accordingly, in a divided opinion, the board upheld the decision of the commissioner.[9] Id., 224.

The town appealed from the decision of the board to the Appellate Court. Id., 234. On appeal, the town renewed its claim that the definition of "member" set forth in § 7-425 (5) governed whether the plaintiff was eligible for benefits under § 7-433c as "a uniformed member of a paid municipal fire department" while he was employed by the town as a part-time firefighter. (Internal quotation marks omitted.) Id. Observing that this is an issue of first impression; id., 237; the Appellate Court cited *Ciarlelli* v. *Hamden*, 299 Conn. 265, 277–78, 8 A.3d 1093 (2010), for the proposition that § 7-433c is workers' compensation legislation that is remedial in nature and, therefore, subject to a broad construction in favor of disabled employees. See *Clark* v. *Waterford, Cohanzie*

_____

adequate basis for determining the number of hours the plaintiff worked. Although the board found the commissioner's use of the word *consistent* to describe the number of hours the plaintiff worked to be 'inartful,' it found that the balance of the commissioner's findings accurately reflected the plaintiff's testimony." (Emphasis in original.) *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 231.

[9] One member of the board, William J. Watson III, dissented, agreeing with the town's statutory arguments, based on the plain language and codification placement of the provisions at issue, that the definition of "member" in § 7-425 (5) controlled eligibility for benefits under § 7-433c. Given the record before the board, the dissenting member concluded that the plaintiff's claim was not compensable because "the factual circumstances of the [plaintiff's] employment [did not] satisfy the statutory requirements of § 7-433c."

Clark *v.* Waterford, Cohanzie Fire Dept.

*Fire Dept.*, supra, 206 Conn. App. 238. The Appellate
Court then concluded that, although §§ 7-425 (5) and
7-433c "are both contained within part II of chapter 113
of the General Statutes, which is titled Retirement," they
do not "concern the same subject matter" and "cannot
be read together without reaching an absurd result."
Id., 239. Specifically, the Appellate Court relied on the
definition of "participating municipality," as set forth
in § 7-425 (2) and mentioned in § 7-425 (5), which, it
observed, "means a municipality that participates in the
retirement fund" that is "governed by § 7-425 [namely]
the voluntary public pension plan provided by the state
for participating municipalities and their employees and
elective officers [retirement fund]." (Internal quotation
marks omitted.) Id., 240. Observing that "[n]ot all munic-
ipalities or departments participate in the retirement
fund," the Appellate Court determined that § 7-433c (a)
refers to General Statutes § 7-467[10] to incorporate a broader
definition of "municipal employer" to make "clear that
heart and hypertension benefits shall be paid . . . to
a qualifying uniformed firefighter or regular member of
a municipal police department, regardless of whether
the municipality participates in the retirement fund."
(Internal quotation marks omitted.) Id., 241. The Appel-
late Court further observed that "the town's interpreta-
tion also leads to an absurd result that heart and
hypertension benefits are available only to uniformed
firefighters employed and paid by municipalities that
participate in the retirement fund." Id., 242. To this end,
the Appellate Court emphasized that "§ 7-425 explicitly

---

[10] General Statutes § 7-467 (1) provides: " 'Municipal employer' means any
political subdivision of the state, including any town, city, borough, district,
district department of health, school board, housing authority or other
authority established by law, a private nonprofit corporation which has a
valid contract with any town, city, borough or district to extinguish fires
and to protect its inhabitants from loss by fire, and any person or persons
designated by the municipal employer to act in its interest in dealing with
municipal employees . . . ."

Clark *v.* Waterford, Cohanzie Fire Dept.

provides that the definitions set forth therein shall apply 'except as otherwise provided' '' and that "the use of the term *member* in § 7-433c is one of the exceptions expressly contemplated by § 7-425, itself.'' (Emphasis in original.) Id., 242–43. Accordingly, the Appellate Court rendered judgment affirming the decision of the board. Id., 243. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the town claims that the Appellate Court incorrectly concluded that the definition of "member'' in § 7-425 (5) does not govern the plaintiff's eligibility for benefits under § 7-433c. Urging a strict construction of § 7-433c; see footnote 11 of this opinion; the town contends that the Appellate Court's construction of the statutes improperly disregarded the plain language of § 7-425 (5) and discounted the importance of the placement of § 7-433c in the part of the General Statutes that contains the provisions governing the municipal retirement fund. The town argues that the Appellate Court's construction of the statutes renders meaningless, redundant, and superfluous the words "paid'' and "member'' in § 7-433c. The town emphasizes that applying § 7-425 (5) to § 7-433c does not create an absurd or unworkable result given that it is well settled that § 7-433c is a legislative bonus; see, e.g., *Carriero* v. *Naugatuck*, 243 Conn. 747, 754–55, 760–61, 707 A.2d 706 (1998); *Grover* v. *Manchester*, 168 Conn. 84, 88–89, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975); with part-time employees often not being eligible for benefits otherwise given to full-time employees, such as retirement or vacation pay. Citing *Genesky* v. *East Lyme*, 275 Conn. 246, 266–67, 881 A.2d 114 (2005), the town emphasizes its prerogative under the statutory scheme to make staffing choices that would enable it to avoid liability under § 7-433c.

The plaintiff argues in response that the Appellate Court correctly concluded that the definition of "mem-

Clark *v.* Waterford, Cohanzie Fire Dept.

ber" in § 7-425 (5) is inapplicable to the plain and unambiguous language of § 7-433c. The plaintiff argues that § 7-425 (5) is limited to the retirement fund insofar as its plain language, particularly its numerous exclusions for classifications such as teachers who are in the state retirement system, "repeatedly references retirement and pension systems." The plaintiff posits that § 7-433c benefits are related to but "distinct in purpose and scope from the rest of the retirement [fund] benefits." The plaintiff further argues that the town's construction of the statutes is inconsistent with our recent explication of eligibility for benefits under § 7-433c in *Holston* v. *New Haven Police Dept.*, 323 Conn. 607, 616–17, 149 A.3d 165 (2016). Citing, among other cases, *Grover* v. *Manchester*, supra, 168 Conn. 88, and the Appellate Court's decision in *Bucko* v. *New London*, 13 Conn. App. 566, 569, 537 A.2d 1045 (1988), the plaintiff contends that the only restriction imposed on the word "member" under § 7-433c is that the member be "uniformed," which recognizes the risks associated with firefighting and law enforcement and distinguishes clerical or other employees from those who are eligible for benefits. The plaintiff also cited to *Bucko* in support of his argument that the Appellate Court had correctly determined that incorporating the definition from § 7-425 (5) would complicate the eligibility of police officers for benefits under § 7-433c and "produce an absurd and unworkable result by denying officers the benefits to which they are entitled under § 7-433c because their municipal employer does not participate in the voluntary [retirement fund]," insofar as "the benefits granted under § 7-433c are in no way related to or contingent [on] participation in the retirement [fund]." Finally, the plaintiff argues that the Appellate Court's construction of the statutes is compatible with this court's decision in *Genesky* v. *East Lyme*, supra, 275 Conn. 246, because both cases involved a straightforward interpretation of

Clark *v.* Waterford, Cohanzie Fire Dept.

the plain language of § 7-433c. We, however, agree with the town and conclude that the definition of ''member'' in § 7-425 (5) governs eligibility for benefits under § 7-433c.

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . .

"In addition, we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees. . . . This proposition applies as well to the provisions of [§] 7-433c . . . because the measurement of the benefits to which a § 7-433c claimant is entitled is identical to the benefits that may be awarded to a [claimant] under'' the Workers' Compensation Act, General Statutes § 31-275 et seq.[11] (Cita-

---

[11] We acknowledge the town's argument that, in providing for heart and hypertension benefits, § 7-433c is special " 'bonus legislation,' " the eligibility for which must be strictly construed under the board's decision in *Gaudett* v. *Bridgeport Police Dept.*, No. 6337, CRB 4-19-7 (September 8, 2021), rev'd, 218 Conn. App. 720, 293 A.3d 351 (2023). In *Gaudett*, the board followed the strict construction approach with respect to eligibility for benefits under

Clark *v.* Waterford, Cohanzie Fire Dept.

tion omitted; internal quotation marks omitted.) *Coughlin* v. *Stamford Fire Dept.*, 334 Conn. 857, 862–63, 224 A.3d 1161 (2020). It is axiomatic that we follow the plain meaning rule set forth in General Statutes § 1-2z in construing statutes, including § 7-433c. See, e.g., *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 613–14; *Genesky* v. *East Lyme*, supra, 275 Conn. 253–54.

By way of background, we note that "§ 7-433c simply [provides] special compensation, or even an outright bonus, to qualifying [police officers] and fire[fighters], [and] serves a proper public purpose . . . . [T]he out-

§ 7-433c that it first articulated in *Genesky* v. *East Lyme*, No. 4600, CRB 8-02-12 (December 8, 2003), aff'd, 275 Conn. 246, 881 A.2d 114 (2005). See *Gaudett* v. *Bridgeport*, supra, No. 6337, CRB 4-19-7. The board's decision in *Genesky* relied on the axiom that statutory provisions that are in derogation of the common law must be strictly construed, in support of the proposition that the "original intent of the legislation was to provide a remedy to qualifying persons without the need to prove traditional elements of causation under the Workers' Compensation Act. Thus, the eligibility requirements set out in the statute must be strictly construed." *Genesky* v. *East Lyme*, supra, No. 4600, CRB 8-02-12.

This strict approach to the interpretation of § 7-433c conflicts with three decades of case law from this court, beginning with *Szudora* v. *Fairfield*, 214 Conn. 552, 573 A.2d 1 (1990), which acknowledged its nature as a special bonus for qualified police officers and firefighters but considered § 7-433c to be analogous to "workers' compensation legislation, [which] because of its remedial nature, should be broadly construed in favor of disabled employees." Id., 557–58; see, e.g., *Coughlin* v. *Stamford Fire Dept.*, 334 Conn. 857, 863, 224 A.3d 1161 (2020); *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 613; *Carriero* v. *Naugatuck*, supra, 243 Conn. 761–62. Indeed, the concurring opinion in this court's decision in *Genesky*, in which the majority affirmed the decision of the board in that case, expressly applied that broader construction in considering whether a constable was "a member of 'a paid municipal police department' " eligible for § 7-433c benefits. *Genesky* v. *East Lyme*, supra, 275 Conn. 268–69 (*Borden, J.*, concurring); see id., 278–79 (*Borden, J.*, concurring) (concluding that statute was ambiguous for purposes of § 1-2z, in part based on "[the] judicial interpretive maxim regarding § 7-433c [that] supports a broad interpretation of the phrase 'municipal police department' as applied to the facts of [that] case"); cf. id., 253–54 (majority opinion followed § 1-2z without reference to any rules of construction). Because the town does not ask us to overrule or to otherwise limit this body of case law, we continue to follow this rule of broad construction in determining questions of eligibility for benefits under § 7-433c.

Clark *v.* Waterford, Cohanzie Fire Dept.

right bonus provided by the statute is that the claimant is not required to prove that the heart disease is causally connected to this employment, which he would ordinarily have to establish in order to receive benefits pursuant to the Workers' Compensation Act. . . . Thus, although [the Workers' Compensation Act] is used . . . as a *procedural avenue* for administration of the benefits under § 7-433c . . . an award under § 7-433c is not a workers' compensation award. . . . Therefore, although this court has recognized that the type and amount of benefits available pursuant to § 7-433c are the same as those under the Workers' Compensation Act . . . the *liability* for payment of those benefits is not.'' (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bergeson* v. *New London*, 269 Conn. 763, 777–78, 850 A.2d 184 (2004); see, e.g., *King* v. *Sultar*, 253 Conn. 429, 438–39, 444, 754 A.2d 782 (2000); *Carriero* v. *Naugatuck*, supra, 243 Conn. 754–55.

We begin with the text of § 7-433c (a), which provides in relevant part: ''Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event *a uniformed member of a paid municipal fire department* or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, *shall receive from his municipal employer compensation and medical care* in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course

Clark *v.* Waterford, Cohanzie Fire Dept.

of his employment and was suffered in the line of duty and within the scope of his employment, *and from the municipal or state retirement system under which he is covered*, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. . . . *The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered*, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, 'municipal employer' has the same meaning as provided in section 7-467.'' (Emphasis added.)

The single issue of statutory construction presented in this appeal is whether we must construe the word "member" in the phrase "a uniformed member of a paid municipal fire department," as used in § 7-433c (a), in accordance with its ordinary meaning, pursuant to which the plaintiff would be eligible for benefits under § 7-433c, or in accordance with the definition provided by § 7-425 (5). Section 7-425 provides in relevant part: "The following words and phrases *as used in this part, except as otherwise provided*, shall have the following meanings:

* * *

"(5) 'Member' means any regular employee or elective officer receiving pay from a participating municipality . . . who has been included by such municipality in

Clark *v.* Waterford, Cohanzie Fire Dept.

the pension plan as provided in section 7-427, *but shall not include any person who customarily works less than twenty hours a week* if such person entered employment after September 30, 1969, any police officer or firefighter who will attain the compulsory retirement age after less than five years of continuous service in fund B . . . .'' (Emphasis added.)

Although the Appellate Court's construction of the statutes at issue was reasonable for purposes of the § 1-2z analysis given the broad construction that we extend to § 7-433c; see footnote 11 of this opinion; the issue before us in this appeal is ultimately resolved by the language of the statutes when considered in context, particularly in the absence of legislative history to provide square support for the proposition that the legislature did not intend the definition of ''member'' in § 7-425 (5) to apply. When statutory language, even if ambiguous for purposes of § 1-2z, provides greater support for an interpretation of the statute than does the legislative history, we must yield to the implications of the statutory language, particularly when the legislative history is more general in nature and does not furnish any evidence of legislative intent with respect to the specific point of law at issue.[12] See *Butts* v. *Bysiewicz*, 298 Conn.

[12] Thus, we emphasize that the legislative history of the statute does not illuminate the meaning of the word ''member'' or suggest that the definition in the chapter does not apply. Numerous cases provide a detailed review of the ''rather tumultuous'' history of ''Connecticut's statute providing benefits for police and fire personnel who suffer from hypertension or heart disease,'' including decisions from this court considering the constitutionality of its various iterations. (Internal quotation marks omitted.) *Morgan* v. *East Haven*, 208 Conn. 576, 580, 546 A.2d 243 (1988); see, e.g., *Bergeson* v. *New London*, supra, 269 Conn. 777 n.10; *Morgan* v. *East Haven*, supra, 580–81; *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 667–69, 425 A.2d 131 (1979); see also *Grover* v. *Manchester*, supra, 168 Conn. 86, 88–89 (''[the] outright bonus'' provided by current version of statute to qualifying police and fire personnel was not unconstitutional taking); *Ducharme* v. *Putnam*, 161 Conn. 135, 143, 285 A.2d 318 (1971) (conclusive presumption in 1969 version of statute violated due process clauses of Connecticut and United States constitutions).

To the extent the dissent relies on the legislative history of § 7-433c in support of the proposition that the legislature intended to provide a broad benefit to

665, 687–88, 5 A.3d 932 (2010) ("we see no evidence in the legislative history to undermine the construction to which the text itself is most conducive"); cf. *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003) (emphasizing that, even under purposive approach to statutory interpretation that preceded enactment of § 1-2z, language remains "the most important factor to be considered," and that "the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning"). That language compels the conclusion that the meaning of "member," as used in § 7-433c, is controlled by § 7-425 (5), given the relationship between § 7-433c and other statutes and the cardinal principle of interpretation "that the legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, 342 Conn. 25, 36, 268 A.3d 630 (2022).

First, § 7-425 clearly and unambiguously provides that, "except as otherwise provided," it governs the meanings of the statutes in part II of chapter 113 (title 7) of the General Statutes, which provides for the establishment of the retirement fund as a voluntary system in which municipalities may elect to participate to provide for their employees' retirement benefits. See General Statutes § 7-427 (a). We must presume that the legislature acted consciously when it codified § 7-433c in that part, with its governing definitions. As one leading authority on statutory interpretation emphasizes, "in the construction of a particular code section, atten-

*all* paid firefighters and police officers in Connecticut, without qualification, we respectfully disagree. See part III of the dissenting opinion. In our view, the generalized statements of purpose on which the dissent relies are not sufficiently persuasive on this point to counter the weight of the statutory language.

Clark *v.* Waterford, Cohanzie Fire Dept.

tion should be given to the entire chapter, or even the entire code, to determine the purpose and objective of the legislature in organizing the material. Under some circumstances the placement or rearrangement of code sections may be helpful to determine [the] proper construction of the statute. When sections originally enacted independently are consolidated into a single chapter of a code, they are ordinarily read together as a single act.'' (Footnotes omitted.) 1A N. Singer & J. Singer, Sutherland Statutes and Statutory Construction (7th Ed. 2009) § 28:11, p. 637; see, e.g., *Unite New Mexico* v. *Oliver*, 438 P.3d 343, 352 (N.M. 2019) (transfer of statute governing straight ticket voting out of chapter giving New Mexico secretary of state authority over form of ballot suggested that secretary was not authorized to decide questions relating to straight ticket voting). The text of § 7-433c expressly recognizes the logical and factual relationship between heart and hypertension benefits and retirement benefits in multiple places. See General Statutes § 7-433c (a) (obligating ''[the] municipal employer'' of eligible police officer or firefighter, or ''the municipal or state retirement system under which [the eligible police officer or firefighter] is covered,'' to pay death or disability benefits under statute and providing that such ''benefits . . . shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered''). Given this relationship, we must assume that this placement was intentional, particularly in view of the availability of other logically suitable codification options, such as within the related provisions of the Workers' Compensation Act.[13] Cf. *Genesky* v. *East Lyme*, supra,

_____

[13] We acknowledge that ''the codification of a public act of the state is an administrative duty of the legislative commissioners'' under General Statutes § 2-56 (g) and that, although it ''is within their discretion to arrange and codify public acts . . . they are not lawmakers.'' *Fava* v. *Arrigoni*, 35 Conn. Supp. 177, 178, 402 A.2d 356 (1979); see id., 179 (defining terms of General Statutes

Clark *v.* Waterford, Cohanzie Fire Dept.

275 Conn. 252 n.9 ("[a]lthough an award of benefits under § 7-433c is not a workers' compensation award, the Workers' Compensation Act is used as a 'procedural avenue' for the administration of benefits under § 7-433c").

Thus, consistent with § 1-2z, we turn to the precept that, "[when] the legislature has specifically defined an operative term used within a statute, we are bound to accept that definition . . . unless to do so would create an irrational result that could not have been intended by the legislature." (Citation omitted.) *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 349, 612 A.2d 1203 (1992); see id., 350 (it was not irrational to apply statutory definition of "compensation" to allow double recovery via both payment of benefits under Workers' Compensation Act and award of federal Veterans Administration benefits because "the legislature rationally could have

(Rev. to 1979) § 52-563a, enacted as § 6 of No. 75-637 of the 1975 Public Acts (P.A. 75-637), "in a manner consistent with other sections of P.A. 75-637," with this "construction . . . made more obvious by the omission of any definitions in chapter 925 of the General Statutes, the chapter in which § 6 of P.A. 75-637 (§ 52-563a) is found"). Nevertheless, we deem the placement of § 7-433c to be instructive in its interpretation given both (1) the presumption that the legislature is aware of the law and decisions construing it, and (2) the long-standing codification of heart and hypertension benefits in chapter 113, governing municipal retirement benefits, both before and after the enactment of § 7-433c as § 1 of No. 524 of the 1971 Public Acts, particularly given the reference therein to the definition of "municipal employer" in § 7-467. See, e.g., *Stone* v. *East Coast Swappers, LLC*, 337 Conn. 589, 606–607, 255 A.3d 851 (2020) (stating presumption); *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 667–68, 425 A.2d 131 (1979) (emphasizing amendments to make state retirement system applicable to heart and hypertension benefits); *Ducharme* v. *Putnam*, 161 Conn. 135, 143, 285 A.2d 318 (1971) (invalidating conclusive presumption in General Statutes (Rev. to 1969) § 7-433a); cf. *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 159, 12 A.3d 948 (2011) ("The plaintiff seems to assert that a breach of [General Statutes] § 14-227a is a motor vehicle violation simply because of its placement within the motor vehicle chapter. We disagree. At the time § 14-227a was originally enacted in 1963, the Penal Code did not exist. See Public Acts 1963, No. 616, § 1. The Penal Code was not adopted until 1969, approximately six years after the legislature decided to criminalize [operating] under the influence in § 14-227a. Because the Penal Code did not exist at the time the legislature adopted § 14-227a, its placement within the motor vehicle statutes has no impact on determining legislative intent.").

Clark *v.* Waterford, Cohanzie Fire Dept.

intended to prohibit double recovery under [General Statutes] § 31-349 (a) only to the extent that an employee may not recover twice for the same injury under the . . . Workers' Compensation Act''); see also, e.g., *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 156, 12 A.3d 948 (2011) (''[b]ecause the legislature has not defined motor vehicle violation, but has defined violation, we conclude that it is reasonable to apply the definition of violation to the phrase motor vehicle violation'').

We disagree with the plaintiff's argument that § 7-433c functions as an implied exception to § 7-425 (5). This interpretation of § 7-433c as implying a different definition of the word ''member'' is belied by the fact that the legislature expressly provided therein for an independent definition of a different term, namely, ''municipal employer.'' The legislature specifically stated in § 7-433c (a) that the term ''municipal employer,'' as used therein, would be defined by § 7-467; see footnote 10 of this opinion; which provides the definitions applicable to the statutes governing collective bargaining between municipalities and their employees. The legislature's failure to provide a different definition of ''member'' in § 7-433c is telling, insofar as the referenced provision, § 7-467, has a subsection that provides its own definition of ''employee'' that excludes certain part-time employees.[14] Particularly given the codification of § 7-433c in the municipal retirement statutes, it is evident that, had the legislature desired to incorporate a different definition of ''member'' for purposes of eligibility, it could

---

[14] See General Statutes § 7-467 (2) ('' '[e]mployee' means any employee of a municipal employer, whether or not in the classified service of the municipal employer, except elected officials, administrative officials, board and commission members, certified teachers, *part-time employees who work less than twenty hours per week on a seasonal basis*, department heads and persons in such other positions as may be excluded from coverage under sections 7-467 to 7-477, inclusive, in accordance with subdivision (2) of section 7-471'' (emphasis added)).

Clark *v.* Waterford, Cohanzie Fire Dept.

have done so. See, e.g., *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, supra, 342 Conn. 36 ("the legislature's inclusion of a [bona fide occupational qualification] exception in [General Statutes] § 46a-60 (b) (1) demonstrates that the legislature could have provided such an exception in the public accommodation statute but consciously elected not to do so").

Similarly, had the legislature desired to provide more flexibility with respect to the eligibility of firefighters for benefits under § 7-433c, such as by using the more inclusive word "firefighter" as in the related workers' compensation statutes; see General Statutes § 31-275 (1) (A) (i) (defining, "[f]or a police officer or firefighter, [the phrase] 'in the course of his employment'"); it could have done so by using broader terminology. See, e.g., *Stafford* v. *Roadway*, 312 Conn. 184, 194, 93 A.3d 1058 (2014) (noting "[the] well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)). Alternatively, the legislature could have used more flexible phrasing in the definition, as it did when it added the qualifier, "unless the context otherwise provides," with respect to the definitions applicable to the workers' compensation statutes. General Statutes § 31-275; see *Vincent* v. *New Haven*, 285 Conn. 778, 788, 941 A.2d 932 (2008) (under General Statutes § 31-306, specific definition of "the term 'compensation' is expressly limited to payments for burial expenses and weekly payments that represent a percentage of the deceased employee's average weekly earnings").

We recognize that the plaintiff, as a part-time firefighter, performed the same tasks as the full-time firefighters employed by the town. This similarity in job function does not, however, mean that the town was required to pay its part-time firefighters benefits under

Clark *v.* Waterford, Cohanzie Fire Dept.

§ 7-433c. As this court held in concluding that a full-time constable employed by a town was not "a regular member of a paid municipal police department" eligible for benefits under § 7-433c, "there is a difference between a paid municipal police department and a constabulary, and the town has chosen to ensure public safety by establishing a constabulary." (Internal quotation marks omitted.) *Genesky* v. *East Lyme*, supra, 275 Conn. 252–53. Thus, the legislature's use of certain terminology to describe those officials who are eligible for benefits under § 7-433c is controlling, notwithstanding the similarity in those officers' job functions.

We similarly disagree with the plaintiff's contention that the Appellate Court's decision in *Bucko* v. *New London*, supra, 13 Conn. App. 566, supports his eligibility for benefits under § 7-433c. In that case, the Appellate Court held that the hiring of a police officer in a temporary capacity, with his mild hypertension diagnosis having occurred prior to his promotion to a permanent position, did not render him ineligible for benefits under § 7-433c. See id., 567–69, 571. The Appellate Court rejected the city's argument that the police officer's initial temporary appointment put him "outside the eligibility requirements of § 7-433c," observing that "[n]owhere in § 7-433c is there a requirement that any appointment to the regular police force must be a 'permanent' appointment. The qualifiers 'permanent' or 'temporary' are not mentioned in the statute; the only stated prerequisite to the collection of benefits is that the claimant must be a '*regular* member of a paid municipal police department.' " (Emphasis in original.) Id., 570. The Appellate Court's decision in *Bucko* is inapposite because that case did not involve the construction of the word "member," as used in § 7-433c, and did not consider the effect the number of hours per week the claimant worked had on his eligibility for benefits.[15]

---

[15] We similarly disagree with the plaintiff's reliance on our recent decision in *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 607. In *Holston*, we

Clark *v.* Waterford, Cohanzie Fire Dept.

Finally, we disagree with the plaintiff's argument that incorporating the definition of "member" from § 7-425 (5) means that only those firefighters or police officers whose employers have elected to participate in the retirement fund may qualify for benefits under § 7-433c. Specifically, the plaintiff observes that § 7-425 defines a "member" as one who "receiv[es] pay from a participating municipality"; General Statutes § 7-425 (5); and defines the phrase "participating municipality" separately, as "any municipality that has accepted this part, as provided in section 7-427 . . . ." General Statutes § 7-425 (2). As the Appellate Court observed in determining that this interpretation of the language of §§ 7-425 (5) and 7-433c would lead to an absurd result; see *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 242; applying the definition to this extent could have significant effects with respect to the eligibility of firefighters or police officers who are employed by some of Connecticut's largest municipalities, some of which—such as New Haven and Stamford—are not participating municipalities. See Office of the State Comptroller, Retiree Resources, "Who Is in CMERS? Participating Municipalities," available at https://www.osc.ct.gov/rbsd/cmers/plandoc/MasterTownListSept132016.pdf (last visited June 14, 2023); see also *Clark* v. *Waterford, Cohanzie Fire Department*, supra, 241. We do not, however, agree that this result necessarily follows from our holding that the definition of "member" in § 7-425 (5) controls under § 7-433c with respect to the hourly requirement for eligibility. First, § 7-425 (5) uses punctuation to

held that a police officer's failure to assert a timely claim for hypertension benefits did not bar his separate, otherwise timely, claim for heart disease benefits, notwithstanding the link between his hypertension and heart disease. See id., 615–16. *Holston* is inapposite because that case did not concern the effect of a particular police officer's employment status on his eligibility for benefits under § 7-433c, and we were not called on to construe the term "member" when we stated that the plain language of § 7-433c has five health related requirements and "contains no other requirements to qualify for its benefits." Id., 616–17.

Clark *v.* Waterford, Cohanzie Fire Dept.

phrase separately its exclusion of "any person who customarily works less than twenty hours a week if such person entered employment after September 30, 1969," from its description of a "member" as one who "receiv[es] pay from a participating municipality . . . ." Second, the language of § 7-433c is—at best—ambiguous with respect to the issue of whether a firefighter or police officer must be employed by a "participating municipality," given the ample references in § 7-433c to the retirement system under which the employee is covered, which is broader in concept than a simple reference to the retirement fund. See General Statutes § 7-433c (a) (referring to "the *municipal* or state retirement system under which [the member] is covered" (emphasis added)). Moreover, the independent definition in § 7-433c (a) of the term "municipal employer" by reference to § 7-467, as the entity liable to pay the benefits, is itself broader than "participating municipality." Accordingly, we conclude that applying the hourly eligibility requirement in the definition of "member" in § 7-425 (5) to § 7-433c will not necessarily lead to an absurd result.

To the extent "our analysis of the plain and unambiguous statutory text of [§§ 7-425 (5) and 7-433c] may lead to a result that might well have been unintended by the legislature . . . this effect is not a reason to depart from the plain and unambiguous statutory text . . . ." (Citation omitted.) *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, supra, 342 Conn. 42–43. Should the legislature desire to clarify the meaning of § 7-433c to make it plain that *any* paid firefighter is eligible for benefits under that statute, it may certainly do so, given its role as "the policy-making branch of our government."[16] Id., 43; see, e.g., *International Business*

---

[16] Accordingly, we respectfully disagree with the dissent's emphasis on the novelty of the claim in this appeal, relative to the existence of § 7-433c, as counseling in favor of the plaintiff's interpretation of the statute. See parts I and III of the dissenting opinion. The relative novelty of the defendants' claim tells us that this is not a case in which the issue is new to the appellate

Clark *v.* Waterford, Cohanzie Fire Dept.

*Machines Corp.* v. *Brown*, 167 Conn. 123, 135–36, 355
A.2d 236 (1974) (The court observed that policy argu-
ments with respect to a use tax on certain tangible
personal property "might better be advanced before
the General Assembly. Questions of policy are for its
consideration. We can . . . take the statutes [only] as
they have been enacted." (Internal quotation marks
omitted.)).

Because the commissioner did not apply the correct
legal standard in failing to make a finding as to whether
the plaintiff had customarily worked the requisite twenty
hours per week prior to his hiring as a full-time fire-
fighter, the plaintiff is entitled to have the commissioner
decide that factual issue.[17] Further proceedings are
therefore required to determine his eligibility for bene-
fits under § 7-433c. See, e.g., *Deschenes* v. *Transco, Inc.*,
288 Conn. 303, 323–24, 953 A.2d 13 (2008) (concluding

---

courts, but one in which the commission has had a time-tested administrative
construction of § 7-433c, to which we would customarily defer. See, e.g., *Crandle*
v. *Connecticut State Employees Retirement Commission*, 342 Conn. 67, 83–84,
269 A.3d 72 (2022). Thus, to the extent the legislature deems our interpretation
of § 7-433c to be inconsistent with the purpose of the statute, it remains free
to address that via the adoption of clarifying legislation that "in effect construes
and clarifies a prior statute [and that] must be accepted as the legislative
declaration of the meaning of the original act. . . . An amendment that is
intended to clarify the original intent of an earlier statute necessarily has
retroactive effect." (Internal quotation marks omitted.) *Praisner* v. *State*, 336
Conn. 420, 429, 246 A.3d 463 (2020); see id. ("[t]o determine whether the
legislature enacted a statutory amendment with the intent to clarify existing
legislation, we look to various factors, including, but not limited to (1) the
amendatory language . . . (2) the declaration of intent, if any, contained in
the public act . . . (3) the legislative history . . . and (4) the circumstances
surrounding the enactment of the amendment, such as, whether it was enacted
in direct response to a judicial decision that the legislature deemed incorrect
. . . or passed to resolve a controversy engendered by statutory ambiguity"
(internal quotation marks omitted)).

[17] As was discussed several times during oral argument before this court,
the town's claims presented a novel legal issue under § 7-433c with respect to
the plaintiff's burden of proof. In light of his interpretation of § 7-433c, and the
inconclusive evidence in the record, the commissioner ultimately deemed it
unnecessary to decide this factual question in either his memorandum of
decision or in acting on the town's motions for articulation and to correct.

Clark *v.* Waterford, Cohanzie Fire Dept.

that "additional fact-finding proceedings [were] required because the record . . . [did] not permit us to uphold the decision of the board under the correct legal standard, and also [did] not permit us to direct judgment in favor of the defendants because [despite the existence of evidence in the record] the commissioners [did] not [make] any findings with respect to the apportionment or proportional reduction . . . of the plaintiff's benefits" (citation omitted)); cf. *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 564, 108 A.3d 1110 (2015) (concluding that commissioner's existing findings permitted court to remand case to board with direction to make award in accordance with those findings).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the decision of the Compensation Review Board and to remand the case to the board for it to reverse the commissioner's decision and to remand the case to the commissioner for further proceedings according to law.

In this opinion McDONALD, D'AURIA, MULLINS and ALEXANDER, Js., concurred.

ECKER, J., dissenting. The majority today adopts a novel construction of an important and long-standing statute, with severe consequences throughout Connecticut for innumerable municipal firefighters, police officers, and their survivors. General Statutes § 7-433c provides that every "uniformed member" of a municipal fire department and every "regular member" of a municipal police department hired before July 1, 1996, is entitled to receive an array of valuable disability and retirement benefits if they suffer any heath condition or impairment as a result of heart or hypertension disease.[1]

[1] General Statutes § 7-433c provides: "(a) Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which

346 Conn. 711        JUNE, 2023        739

Clark *v.* Waterford, Cohanzie Fire Dept.

These statutory benefits have existed since the early 1950s, and never once in the past seventy years has this court or, to my knowledge, anyone else suggested that the benefits were not available to *all* uniformed members of *any* municipal fire department and *all* regular members of *any* municipal police department who met the statutory criteria. Indeed, heart and hypertension benefits have been awarded to countless firefighters and police officers under § 7-433c, in contested and uncontested cases alike, without reference to the definition of "member" set forth in General Statutes § 7-425 (5).[2] Until today.

examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, 'municipal employer' has the same meaning as provided in section 7-467.

"(b) Notwithstanding the provisions of subsection (a) of this section, those persons who began employment on or after July 1, 1996, shall not be eligible for any benefits pursuant to this section."

[2] General Statutes § 7-425 provides in relevant part: "The following words and phrases as used in this part, except as otherwise provided, shall have the following meanings:

Clark *v.* Waterford, Cohanzie Fire Dept.

The majority now holds that § 7-433c heart and hypertension benefits are available only to those municipal firefighters and police officers who fit the narrow definition of "member" set forth in § 7-425 (5). In my view, the flaw in this conclusion is both unmistakable and decisive: if the majority is correct, then the very same definition of "member" would mean that heart and hypertension benefits are available *only* to those firefighters and police officers who receive pay from a municipality that chooses to participate in the Connecticut Municipal Employees Retirement System (CMERS), General Statutes § 7-425 et seq. The named defendant, the town of Waterford, Cohanzie Fire Department,[3] accepts this consequence as a natural result of applying § 7-425 (5) to § 7-433c and argues that "limiting benefits to those enrolled in [CMERS] is entirely proper." The majority is not so sanguine and resists the logic conceded by the defendant. The majority agrees that the legislature never intended to limit heart and hyperten-

* * *

"(5) 'Member' means any regular employee or elective officer receiving pay from a participating municipality, and any regular employee of a free public library that receives part or all of its income from municipal appropriation, who has been included by such municipality in the pension plan as provided in section 7-427, but shall not include any person who customarily works less than twenty hours a week if such person entered employment after September 30, 1969, any police officer or firefighter who will attain the compulsory retirement age after less than five years of continuous service in fund B, any teacher who is eligible for membership in the state teachers retirement system, any person eligible for membership in any pension system established by or under the authority of any special act or of a charter adopted under the provisions of chapter 99, or any person holding a position funded in whole or in part by the federal government as part of any public service employment program, on-the-job training program or work experience program, provided persons holding such federally funded positions on July 1, 1978, shall not be excluded from membership but may elect to receive a refund of their accumulated contributions without interest . . . ."

[3] The defendant Connecticut Interlocal Risk Management Agency is not a party to this appeal. See footnote 2 of the majority opinion. All references in this opinion to the defendant are to the town of Waterford, Cohanzie Fire Department.

Clark *v.* Waterford, Cohanzie Fire Dept.

sion benefits to CMERS members and even suggests that such an interpretation would be absurd. But the majority also concludes that it is not necessary to construe § 7-433c to limit these benefits to CMERS members because the sentence defining "member" in § 7-425 (5) can be split in half, the CMERS requirement can be excised, and only the second clause (the exclusion of employees who work less than twenty hours per week) would plainly and unambiguously apply to § 7-433c.

The majority's construction of the relevant statutes is unsound because, simply put, either the entire definition applies to § 7-433c or none of it does. Indeed, guided by General Statutes § 1-2z, I am left with little doubt regarding the correct outcome in this case. The statutes under consideration, far from being plain and unambiguous with respect to the applicability of the term "member" in § 7-425 (5) to "uniformed member" and "regular member" in § 7-433c, are quintessentially ambiguous on that precise question. On the one hand, § 7-425 states that, unless otherwise provided, its definitions apply to the part of the General Statutes in which § 7-433c is codified. On the other hand, virtually every sentence of text in the relevant statutes casts substantial doubt on the meaning that the majority deems obvious. The context provided by the broader statutory schemes adds to that doubt. In the final analysis, the language, legislative history, and remedial purpose of § 7-433c, and its relationship to the retirement system created by § 7-425 et seq. (i.e., CMERS), demonstrates that the definition of "member" does not apply to the terms "uniformed member" and "regular member" in § 7-433c. For that reason, I respectfully dissent.

I

A BRIEF OVERVIEW OF OUR CASE LAW
CONSTRUING § 7-433c

Before examining the language of the relevant statutes, it is useful to briefly review what this court pre-

Clark *v.* Waterford, Cohanzie Fire Dept.

viously has said about the heart and hypertension benefits scheme provided in § 7-433c. Since its enactment in 1951 and subsequent amendment in 1953, the statute now codified at § 7-433c has provided "special compensation to qualifying policemen and firemen who die or become disabled as a result of hypertension or heart disease." (Internal quotation marks omitted.) *Chambers* v. *Electric Boat Corp.*, 283 Conn. 840, 858 n.11, 930 A.2d 653 (2007). Our court repeatedly has observed that "[§] 7-433c was enacted 'for the purpose of placing [municipal firefighters and] policemen who die or are disabled as a result of hypertension or heart disease in the same position vis-à-vis compensation benefits as [municipal firefighters and] policemen who die or are disabled as a result of service related injuries.' " *Lambert* v. *Bridgeport*, 204 Conn. 563, 566–67, 529 A.2d 184 (1987), quoting *Pyne* v. *New Haven*, 177 Conn. 456, 460–61, 418 A.2d 899 (1979); accord *King* v. *Sultar*, 253 Conn. 429, 442, 754 A.2d 782 (2000); *Maciejewski* v. *West Hartford*, 194 Conn. 139, 144, 146, 480 A.2d 519 (1984).

A municipal firefighter or police officer eligible for heart and hypertension benefits "is not required to prove that the [hypertension or] heart disease is causally connected to [his or her] employment . . . ." (Internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, 299 Conn. 265, 276, 8 A.3d 1093 (2010). "The plain language of § 7-433c demonstrates that a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department [whose employment began prior to July 1, 1996] is entitled to benefits under the statute when the officer meets the following requirements: (1) [the officer] has passed a preemployment physical; (2) the preemployment physical failed to reveal any evidence of hypertension or heart disease; (3) [the officer] suffers either off duty or on duty any condition or impairment of health; (4) the condition or impairment of health was caused by hyper-

Clark *v.* Waterford, Cohanzie Fire Dept.

tension or heart disease; and (5) the condition or impairment results in his death or his temporary or permanent, total or partial disability. *The statute contains no other requirements to qualify for its benefits.*'' (Emphasis added.) *Holston* v. *New Haven Police Dept.*, 323 Conn. 607, 616–17, 149 A.3d 165 (2016).

The majority accurately and frankly acknowledges the remedial character of § 7-433c. See footnote 11 of the majority opinion and accompanying text. Indeed, this characteristic has never been in doubt, and it is the reason that case after case decided by this court has observed that the statute "should be broadly construed in favor of disabled employees." (Internal quotation marks omitted.) *Coughlin* v. *Stamford Fire Dept.*, 334 Conn. 857, 863, 224 A.3d 1161 (2020). We also have said that any limitation on the right of recovery must be interpreted narrowly so as "not [to] impose greater constraints on the benefits afforded to disabled police officers and firefighters than the legislature has chosen to adopt." *Szudora* v. *Fairfield*, 214 Conn. 552, 559, 573 A.2d 1 (1990); see *Costello* v. *Fairfield*, 214 Conn. 189, 194, 571 A.2d 93 (1990) ("[b]ecause the Heart and Hypertension Act is remedial legislation, we should not ourselves enlarge [on] the limitations it imposes on recovery").

The foregoing cases are merely representative. As I previously mentioned, entitlement to heart and hypertension benefits has been an area of frequent litigation over the past seventy years. This fact is itself noteworthy because it places the defendant's proposed construction of the statute in historical perspective. Heart and hypertension benefits have been very costly to municipalities over the years, so much so that the legislature adopted a sunset provision putting an eventual end to them,[4] and municipalities always have had a

[4] See Public Acts 1996, No. 96-231, §§ 1 and 2 (amending subsection (b) of § 7-433c to provide that municipal firefighters and police officers whose employment began on or after July 1, 1996, are ineligible for heart and

744 JUNE, 2023 346 Conn. 711

Clark *v.* Waterford, Cohanzie Fire Dept.

strong financial incentive to seek to avoid paying these benefits by advancing every plausible argument, including an argument that the statutory language in § 7-433c is limited by the definitional terms in § 7-425. Yet, until now, there never has been any doubt that the benefits conferred by § 7-433c are available to all uniformed firefighters and regular police officers hired before July 1, 1996, regardless of whether the employing municipality chooses to participate in CMERS or the employee works part-time.[5] Indeed, these benefits historically have been awarded to firefighters and police officers who clearly were *not* members of CMERS. See, e.g., *Lambert* v. *Bridgeport,* supra, 204 Conn. 566, 571 (upholding award under § 7-433c to police officer who was beneficiary of pension plan established pursuant to pension agreement "*not* promulgated under [CMERS]" (emphasis added)).

There is no statute of limitations barring originality in statutory construction, and it may be possible that the plain meaning of § 7-433c has been hiding in plain sight for the past seventy years. But the sheer novelty of the defendant's claim, particularly against a background of settled expectations, suggests to me that we should approach its legal theory with great caution.

hypertension benefits); see also 39 S. Proc., Pt. 8, 1996 Sess., p. 2571, remarks of Senator Louis C. DeLuca ("This [amendment] would bring some sort of relief to the municipalities. We've talked about state mandates and unfunded state mandates. This is one of those that has been consistently a problem [for] many of the major cities.").

[5] To be sure, there have been skirmishes over eligibility for heart and hypertension benefits around the margins. See, e.g., *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 614, 616–17 (police officer was eligible for benefits after passing preemployment physical and suffering from disability caused by heart disease); *Genesky* v. *East Lyme*, 275 Conn. 246, 253–59, 881 A.2d 114 (2005) (constable was not regular member of paid municipal police department); *Bucko* v. *New London*, 13 Conn. App. 566, 569–71, 537 A.2d 1045 (1988) (temporary appointee to police force was regular member of paid municipal police department). I consider it notable that our courts never have looked to § 7-425 (5) for assistance in determining who is eligible to receive these benefits under § 7-433c.

Clark *v.* Waterford, Cohanzie Fire Dept.

## II

SECTION 1-2z ANALYSIS OF THE TEXT
AND STATUTORY CONTEXT OF
§§ 7-425 (5) AND 7-433c

The defendant claims that the right to recover heart and hypertension benefits under § 7-433c is limited by the definition of "member" in § 7-425 (5). The sole basis for this claim is that § 7-433c is codified in the same part of the General Statutes as § 7-425, which provides in relevant part that "[t]he following words and phrases as used in this part, except as otherwise provided, shall have the following meanings . . . ." Although the plain language of § 7-425 provides that it shall apply to all "words and phrases as used in this part," the principles of statutory construction codified in § 1-2z instruct that we must examine the entire text of the relevant statutes, their relationship to other statutes and, if necessary, the potential absurdity and unworkability of the proffered construction. These steps are not suspended because one of the statutes under review contains a statutorily defined term, especially one that applies "except as otherwise provided . . . ." General Statutes § 7-425.

As a matter of fact, this court has declined to apply statutory definitions on multiple occasions after conducting the appropriate § 1-2z analysis. As we have observed, when the applicability of a statutory definition is at issue, "[t]he [threshold] question . . . is *whether* the statutory definition applies in the first instance." (Emphasis added.) *Commissioner of Environmental Protection* v. *Mellon*, 286 Conn. 687, 693 n.7, 945 A.2d 464 (2008). To resolve this question, we must consider the statutory definition within the context of the statutory scheme as a whole and the purpose it was designed to serve to determine whether its application is plausible, logical, rational, or will yield absurd and unworkable results. See, e.g., *Cohen* v. *Rossi*, 346 Conn.

Clark *v.* Waterford, Cohanzie Fire Dept.

642, 665–67, A.3d (2023) (declining to apply statutory definition of "municipal clerk" when textual and contextual considerations, including impracticality of literal definition, indicated that different meaning was intended); *418 Meadow Street Associates, LLC* v. *Clean Air Partners, LLC*, 304 Conn. 820, 831 n.11, 43 A.3d 607 (2012) (concluding that statutory definition of term " 'interest' . . . quite simply [did not apply] because such an application would be nonsensical"); *Commissioner of Environmental Protection* v. *Mellon*, supra, 691, 693–95 (concluding that statutory definition of term "person" did not apply to statute in same chapter because application would create redundancy in text and contravene statute's broader purpose and legislative intent); *DaimlerChrysler Services North America, LLC* v. *Commissioner of Revenue Services*, 274 Conn. 196, 205–209, 875 A.2d 28 (2005) (concluding that statutory definition of term "retailer" did not apply to tax credit under statutory scheme); *State* v. *Stephenson*, 207 Conn. App. 154, 181–84, 263 A.3d 101 (2021) (concluding that statutory definition of term "physical evidence" did not apply to crime of tampering or fabricating physical evidence), cert. denied, 342 Conn. 912, 272 A.3d 198 (2022).

In the present case, a proper § 1-2z analysis raises serious doubts about whether the definition of "member" in § 7-425 (5) was intended to apply to § 7-433c. The definitions in § 7-425 are part of the statutory framework governing the administration of CMERS. See *Maturo* v. *State Employees Retirement Commission*, 326 Conn. 160, 172, 162 A.3d 706 (2017). Subdivision (5) of the statute manifestly serves that purpose. It begins by designating a general category of "regular employee[s] or elective officer[s]" who qualify as "member[s]" under CMERS and then excludes certain subsets of those persons from the scope of that definition. General Statutes § 7-425 (5). Under § 7-425 (5), a "member" means, in

346 Conn. 711 JUNE, 2023 747

Clark *v.* Waterford, Cohanzie Fire Dept.

relevant part, "any regular employee or elective officer *receiving pay from a participating municipality . . . who has been included by such municipality in the pension plan as provided in section 7-427, but shall not include any person who customarily works less than twenty hours a week if such person entered employment after September 30, 1969 . . . .* " (Emphasis added.)

The meaning of this definition, in my view, is clear. To be a "member," a municipal employee or elective officer must be paid by a "participating municipality." A "participating municipality" is defined in § 7-425 (2) as "any municipality that has accepted this part, as provided in section 7-427 . . . ." Section 7-427, in turn, is the provision at the center of the statutory scheme establishing CMERS; it permits a municipality to opt into CMERS and to designate which of its departments will participate in the retirement fund.[6] Some of the largest municipalities in Connecticut (New Haven and Waterbury, for example) do not participate in CMERS. Other municipalities, such as Hartford and Stamford, participate as to certain of their municipal employees but do not include their fire or police personnel in the fund.[7] As the Appellate Court correctly concluded on

---

[6] General Statutes § 7-427 (a) provides in relevant part: "Any municipality except a housing authority, which is governed by subsection (b) of this section or a regional workforce development board established under section 31-3k, which is governed by section 7-427a, *may, by resolution passed by its legislative body and subject to such referendum as may be hereinafter provided, accept this part as to any department or departments of such municipality as may be designated therein,* including elective officers if so specified, free public libraries which receive part or all of their income from municipal appropriation, and the redevelopment agency of such municipality whether or not such municipality is a member of the system, as defined in section 7-452, but such acceptance shall not repeal, amend or replace, or affect the continuance of, any pension system established in such municipality by or under the authority of any special act and all such special acts shall remain in full force and effect until repealed or amended by the General Assembly or as provided by chapter 99. . . ." (Emphasis added.)

[7] See Office of the State Comptroller, Retiree Resources, "Who Is in CMERS? Participating Municipalities," available at https://www.osc.ct.gov/

Clark *v.* Waterford, Cohanzie Fire Dept.

the basis of this statutory scheme, the threshold require-
ment for any municipal employee to fall within the
definition of "member" in § 7-425 (5) is employment by
a municipality that participates in CMERS. See *Clark*
v. *Waterford, Cohanzie Fire Dept.*, 206 Conn. App. 223,
241, 261 A.3d 97 (2021) ("[a]s a result [of the statutory
definitions in § 7-425], and significantly for purposes of
our analysis, a *member* within the meaning of [§ 7-425
(2) and (5)] refers only to those regular employees or
elective officers who receive pay from a municipality
that participates in the retirement fund" (emphasis in
original)).

The majority appears to conclude that the relevant
portion of the single sentence definition of "member"
in § 7-425 (5) can be separated into two independent
parts. It proposes that the first clause, which defines
"member[s]" as employees of municipalities that partic-
ipate in CMERS, does not apply to § 7-433c because it
conflicts with the portions of § 7-433c that indicate that
heart and hypertension benefits are available to munici-
pal firefighters and police officers regardless of the
retirement program "under which [the employee] is
covered . . . ." General Statutes § 7-433c (a). It then
concludes that the second clause of § 7-425 (5), which
excludes from the definition of "member" those persons
who work less than twenty hours per week, can func-
tion independently of the threshold criterion in the first
clause, which requires CMERS participation. The major-
ity posits that the second clause, operating indepen-
dently, excludes part-time, *non*-CMERS firefighters and
police officers from receiving § 7-433c heart and hyper-
tension benefits.

These two clauses cannot be disaggregated in the
manner suggested by the majority. The exclusion con-

rbsd/cmers/plandoc/MasterTownListSept132016.pdf (last visited June 14,
2023).

Clark *v.* Waterford, Cohanzie Fire Dept.

tained in the second clause is not independent and freestanding but, rather, operates to limit the general category of persons designated in the first clause; a "member" is a person who is paid by a participating municipality—a participant in CMERS—who customarily works twenty hours or more per week. The majority's contrary view violates basic principles of statutory construction by splitting a unitary definition into two separate parts, discarding the core part of the definition and retaining only the exception. See *Stratford Police Dept.* v. *Board of Firearms Permit Examiners*, 343 Conn. 62, 79, 272 A.3d 639 (2022) (rejecting plaintiff's reliance on latter part of statutory definition at expense of first part of definition and considering entire definition in statutory analysis); *Wiseman* v. *Armstrong*, 269 Conn. 802, 810, 850 A.2d 114 (2004) ("[a] statute is enacted as a whole and must be read as a whole rather than as separate parts or sections").

In support of its construction, the majority contends that "§ 7-425 (5) uses punctuation to phrase separately its exclusion of 'any person who customarily works less than twenty hours a week if such person entered employment after September 30, 1969,' from its description of a 'member' as one who 'receiv[es] pay from a participating municipality . . . .' " I cannot deny that the definition contains two clauses and uses punctuation (a comma), but the *meaning* of those constituent parts is what matters, and it is clear to me from the syntax that the two clauses work together and are not severable. See *United States National Bank of Oregon* v. *Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 454–55, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993) ("[A] purported [plain meaning] analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning. . . . Over and over we have stressed that [i]n expounding a statute, we must not be guided by a single sentence or member

Clark *v.* Waterford, Cohanzie Fire Dept.

of a sentence, but look to the provisions of the whole law, and to its object and policy. . . . No more than isolated words or sentences is punctuation alone a reliable guide for discovery of a statute's meaning. Statutory construction is a holistic endeavor . . . and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter.'' (Citations omitted; internal quotation marks omitted.)). Construing the definition of ''member'' in § 7-425 (5) as a whole—as we must—results in the logical and inevitable conclusion that, if the definition applies to § 7-433c, then heart and hypertension benefits are available only to those firefighters and police officers who are employed by a municipality that participates in CMERS *and* who customarily work twenty hours or more per week.

With the unitary nature of this definition in mind, I believe that the majority concedes the match when it acknowledges that ''the language of § 7-433c is—at best—ambiguous with respect to the issue of whether a firefighter or police officer must be employed by a 'participating municipality,' given the ample references in § 7-433c to the retirement system under which the employee is covered, which is broader in concept than a simple reference to the [CMERS] retirement fund.'' The majority, in other words, agrees that the text of § 7-433c demonstrates that heart and hypertension benefits are *not* limited to CMERS members. Because the definition of ''member'' includes only CMERS participants, the majority's own analysis of § 7-433c compels the conclusion that the statutory scheme is ''at best'' ambiguous as to whether the definition of ''member'' in § 7-425 (5) was intended to apply to § 7-433c at all.

I agree with the majority that the statutory scheme, taken as a whole, is at the very least ambiguous as to whether a firefighter or police officer claiming heart and hypertension benefits must be employed by a

Clark *v.* Waterford, Cohanzie Fire Dept.

municipality that participates in CMERS. Extensive textual evidence indicates that heart and hypertension benefits were intended to be available to all eligible firefighters and police officers, regardless of the retirement system under which they are covered. The sheer volume of this evidence demonstrates why we should be extremely skeptical that the legislature ever intended the definition of "member" in § 7-425 (5) to govern health and hypertension benefits under § 7-433c.

Section 7-433c (a) provides that the eligible employee "shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 . . . *from the municipal or state retirement system under which he is covered* . . . . The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 *or the municipal or state retirement system under which he is covered* . . . ." (Emphasis added.) I agree with the majority that these ample references to "municipal or state retirement system" strongly suggest that the legislature did not intend for heart and hypertension benefits under § 7-433c to be restricted solely to those firefighters and police officers employed by a "participating municipality."

The majority also observes, and I further agree, that "the independent definition in § 7-433c (a) of the term 'municipal employer' by reference to [General Statutes] § 7-467, as the entity liable to pay the benefits, is itself broader than 'participating municipality.' " See General Statutes § 7-467 (1) (defining "municipal employer" as "*any political subdivision of the state, including any town, city, borough, district, district department of health, school board, housing authority or other authority established by law*, a private nonprofit corporation which has a valid contract with any town, city,

Clark *v.* Waterford, Cohanzie Fire Dept.

borough or district to extinguish fires and to protect its inhabitants from loss by fire, and any person or persons designated by the municipal employer to act in its interest in dealing with municipal employees'' (emphasis added)).[8]

There is additional evidence of ambiguity, both in the text of § 7-433c and in other parts of the broader statutory scheme, that raises still more doubt as to whether the definition of ''member'' in § 7-425 (5) was intended to apply to the terms ''uniformed member'' and ''regular member'' in § 7-433c. Section 7-433c, for its part, begins with a robust and unqualified declaration of exclusive dominion over the subject of heart and hypertension benefits: ''[n]otwithstanding any provision of chapter 568 *or any other general statute*, charter, special act or ordinance to the contrary . . . .'' (Emphasis added.) General Statutes § 7-433c (a). This broad, preemptive language reasonably could be understood to reflect a legislative intention that heart and hypertension benefits should be made available free from *any* statutory limitation that might otherwise apply. See *Velez* v. *Commissioner of Correction*, 250 Conn. 536,

---

[8] The majority concludes that, by expressly providing that the term ''municipal employer,'' as used in § 7-433c, has a particular meaning defined in § 7-467, the legislature demonstrated that the word ''member'' must have the meaning ascribed to it in § 7-425 (5) because, otherwise, a different definition likewise would have been provided in § 7-433c. I would conclude instead that, having defined ''municipal employer'' to clarify that *all* municipalities are obligated to pay heart and hypertension benefits, there was no need to provide additional definitions regarding which firefighters and police officers are entitled to receive those benefits. In other words, because all municipalities cannot mean only ''participating municipalities,'' the terms ''uniformed members'' and ''regular members'' cannot mean only those ''member[s],'' as that term is defined in § 7-425 (5). The statutory scheme is ambiguous because, as the Appellate Court correctly pointed out, the broad definition of ''municipal employer'' in § 7-467 indicates that heart and hypertension benefits are available under § 7-433c to *all* ''uniformed firefighters and regular police officers who are paid by municipalities that do not participate in [CMERS].'' *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 242.

Clark *v.* Waterford, Cohanzie Fire Dept.

544, 738 A.2d 604 (1999) ("the phrase '[n]otwithstanding any other provision of the [G]eneral [S]tatutes' " overrides contrary statutory provisions (emphasis omitted)); cf. *National Labor Relations Board* v. *SW General, Inc.*, 580 U.S. 288, 302, 137 S. Ct. 929, 197 L. Ed. 2d 263 (2017) ("[a] 'notwithstanding' clause [in a statute] . . . shows which of two or more provisions prevails in the event of a conflict"); *Cisneros* v. *Alpine Ridge Group*, 508 U.S. 10, 18, 113 S. Ct. 1898, 123 L. Ed. 2d 572 (1993) ("As [the court has] noted previously in construing statutes, the use of . . . a 'notwithstanding' clause . . . override[s] conflicting provisions of any other section. . . . [A] clearer statement [of legislative intent] is difficult to imagine." (Citation omitted; internal quotation marks omitted.)).

Ambiguity in the broader statutory scheme is also apparent when § 7-433c is viewed in relation to other statutes relating to heart and hypertension benefits. General Statutes § 5-145a provides heart and hypertension benefits to certain state employees, including "member[s] of the security force or fire department of The University of Connecticut" and "member[s] of the Office of State Capitol Police . . . ." Section 5-145a is not codified in the same part of the General Statutes as § 7-425, and, therefore, the term "member" in the former statute is not restricted by the definition in § 7-425 (5). It would be anomalous for the legislature to provide heart and hypertension benefits to state firefighters and police officers regardless of their part-time status, but to restrict the same benefits for municipal firefighters and police officers on that basis. See, e.g., *LaFrance* v. *Lodmell*, 322 Conn. 828, 838, 144 A.3d 373 (2016) (reading statutes on same subject matter in different part of statutory scheme harmoniously "to ensure the coherency of our construction" (internal quotation marks omitted)). Likewise, volunteer municipal firefighters are entitled to heart and hypertension benefits

Clark *v.* Waterford, Cohanzie Fire Dept.

under General Statutes § 7-314a, regardless of the municipality's participation in CMERS and the number of hours customarily worked per week.[9] I can perceive no reason why the legislature would choose to extend these benefits to part-time, volunteer firefighters, but not to part-time firefighters and police officers who are paid for their services.

Lastly, and importantly, our case law indicates that the ambiguity analysis under § 1-2z also requires consideration of whether a proposed interpretation is plausible as a matter of common sense within the statute's intended sphere of operation, which, in this case is the provision of heart and hypertension benefits to municipal firefighters and police officers in Connecticut. The traditional principles of statutory construction codified in § 1-2z do not permit us to substitute our own policy preferences for those expressed by the legislature, but we do not ignore practical and commonsensical considerations when we assess the plausibility of competing interpretations. See *Cohen* v. *Rossi*, supra, 346 Conn. 665–67 (concluding that statutory text was unambiguous in light of practical factors involving operation of municipal clerk's office); *Seramonte Associates*, *LLC* v. *Hamden*, 345 Conn. 76, 91, 282 A.3d 1253 (2022) (rejecting proposed construction of "the word 'submit' " in part because of practical considerations regarding incentive of taxpayers to ensure "that municipal assessors obtain necessary information in a timely fashion"); *Casey* v. *Lamont*, 338 Conn. 479, 493, 258 A.3d 647 (2021) (considering commonsense implications of statutory construction before resorting to extratextual sources to glean legislature's intent); *Board of Educa-*

_____

[9] See General Statutes § 7-314a (d) (conferring heart and hypertension benefits on "an active member of a volunteer fire department or organization certified as a volunteer ambulance service in accordance with section 19a-180 while such member is in training for or engaged in volunteer fire duty or such ambulance service").

Clark *v.* Waterford, Cohanzie Fire Dept.

*tion* v. *State Board of Education*, 278 Conn. 326, 337, 898 A.2d 170 (2006) ("[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended" (internal quotation marks omitted)).

The majority appears to conclude, as did the Appellate Court, that it defies common sense to construe these statutes to limit heart and hypertension benefits to firefighters and police officers employed by municipalities that participate in CMERS. See *Clark* v. *Waterford, Cohanzie Fire Dept.*, supra, 206 Conn. App. 242. I cannot think of a reason why the legislature would limit heart and hypertension benefits in such a manner, and neither the majority nor the defendant has offered any reason that would explain such a seemingly arbitrary result. The absence of any such explanation is especially troubling in light of the remedial purpose of § 7-433c and the real-world consequences of the majority's holding. The majority's restrictive construction of § 7-425 (5) may prove especially harmful to those firefighters and police officers, hired before July 1, 1996, who have planned their affairs in reasonable reliance on the availability of these important benefits. For example, individuals typically make decisions about the need to purchase life, health or disability insurance and make similar, forward-looking plans in light of the employment benefits that they reasonably believe they already possess. It seems highly unlikely that the firefighters and police officers affected by today's decision—those hired prior to July 1, 1996—will be able to obtain affordable, substitute protection for the lost benefits at this point in their lives. As a result of the majority's decision, the payment of heart and hypertension benefits to future claimants employed by nonparticipating municipalities is thrown into doubt, and there may even be serious question regarding the continua-

Clark *v.* Waterford, Cohanzie Fire Dept.

tion of past awards payable in the future to non-CMERS firefighters, police officers, and their survivors.[10]

### III

### EXTRATEXTUAL EVIDENCE OF LEGISLATIVE INTENT

A thorough review of the history, purpose, and legislative intent animating § 7-433c leads me to conclude that the terms "uniformed member" and "regular member" do not incorporate the definition of "member" in § 7-425 (5) but, instead, must be accorded their natural and ordinary meanings without reference to the latter statute. See General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"). There is simply nothing in the legislative history to suggest any intention to restrict the availability of heart and hypertension benefits to firefighters and police officers employed by a limited class of municipalities. To the contrary, the benefits clearly were intended for all eligible firefighters and police officers, regardless of whether they are employed by a municipality that participates in CMERS or work less than twenty hours per week.

As I previously explained, the purpose of § 7-433c was to confer heart and hypertension benefits on municipal firefighters and police officers who meet the statutory requirements set forth in § 7-433c, regardless of whether the heart condition or hypertension was caused by, or even related to, the municipal firefighter's or police officer's employment. The first version of the heart and

---

[10] At least one court has concluded that heart and hypertension benefits are protected by the due process clause of the fourteenth amendment. See *Smith* v. *East Lyme*, Docket No. 527383, 1994 WL 133379, *5 (Conn. Super. April 5, 1994) (§ 7-433c benefits are identifiable property right for cause of action pursuant to 42 U.S.C. § 1983). The question is not presented in this case, and I express no opinion on its merits.

Clark *v.* Waterford, Cohanzie Fire Dept.

hypertension benefits statute was enacted in 1951 and originally provided these benefits to "uniformed member[s]" of "paid fire department[s] . . . ."[11] Public Acts 1951, No. 220. The legislative history from 1951 is relatively sparse as it pertains specifically to the word "member," but it is evident that heart and hypertension benefits were intended to apply to all municipalities across the state and that "member" took on a plain meaning. See, e.g., Proposed Senate Bill No. 736, 1951 Sess. ("STATEMENT OF PURPOSE: [t]he purpose of this act is to provide for firemen whose health is impaired by hypertension or heart disease while *members of any city fire department*" (emphasis added)).[12]

The version of the bill that was ultimately enacted in 1951 by the legislature used language that broadly provided that, "[n]otwithstanding the provisions of any general statute or special act to the contrary affecting the noncontributory or contributory retirement systems of *any municipality of the state* as defined by section 680 of the general statutes, any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability to a uniformed *member* of a paid fire department of *such municipality* who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in line of duty." (Emphasis added.)

---

[11] The definition of "member" in § 7-425 (5) was codified in that same chapter in 1945 and originally provided that " 'member' shall mean any regular employee or elective officer receiving pay from a participating municipality who has been included by such municipality in the pension plan as provided in section 122h . . . ." General Statutes (Supp. 1945) § 121h. The definition did not contain a limit as to the number of hours until 1969. See Public Acts 1969, No. 408.

[12] This proposed version of the bill contained the word "member" and began with the following language: "Notwithstanding the provisions of any general or special law to the contrary affecting the non-contributory or contributory retirement systems of any city of the state of Connecticut . . . ." Proposed Senate Bill No. 736, 1951 Sess.

Clark *v.* Waterford, Cohanzie Fire Dept.

Public Acts 1951, No. 220. General Statutes (1949 Rev.)
§ 680 defined "municipality" in relevant part as "each
town, consolidated town and city, consolidated town
and borough, city, [or] borough . . . upon which is
placed by law the duty of, or which has itself assumed
the duty of, protecting its inhabitants from loss of fire.
. . ." As the statute was amended to include police and
to strengthen the presumption that these conditions
were sustained in the line of duty, this expansive lan-
guage carried through.[13]

In 1971, when the statute was renumbered § 7-433c,
the language changed slightly from these earlier ver-
sions, but, as is still the case today, the statute incorpo-
rated the broad definition of "municipal employer" from
§ 7-467 in its scheme and the broad phrase "municipal
or state retirement system under which he is covered"
when discussing the administration of benefits. See
Public Acts 1971, No. 524, § 1.[14] The legislature in 1971
also discussed the purpose behind the provision of heart
and hypertension benefits: to address "the unusual risk
attendant to police and fire work and to provide these
benefits for the men who risk their lives for us each
and every day." 14 H.R. Proc., Pt. 8, 1971 Sess., p. 3525,

---

[13] The 1961, 1967, and 1969 statutes all contained the following language:
"For the purpose of the adjudication of claims for the payment of benefits
under the provisions of chapter [568] of the general statutes and the contribu-
tory or non-contributory retirement systems of *any municipality* . . . ."
(Emphasis added.) Public Acts 1961, No. 330, § 1; accord Public Acts 1969,
No. 380, § 1; Public Acts 1967, No. 770, § 1. They defined " 'municipality' "
as "*any town, city*, borough, fire district or other municipal corporation or
taxing district *which provides police or fire protection to its inhabitants*."
(Emphasis added.) Public Acts 1961, No. 330, § 1; accord Public Acts 1969,
No. 380, § 1; Public Acts 1967, No. 770, § 1.

[14] The legislative history indicates that the reenactment came in response
not to the meaning of "member" changing but, rather, to this court's striking
down the conclusive presumption added in 1969 as unconstitutional in
*Ducharme* v. *Putnam*, 161 Conn. 135, 143, 285 A.2d 318 (1971). See 14 S.
Proc., Pt. 6, 1971 Sess., pp. 2803–2804, remarks of Senator Wilber G. Smith.
The history indicates that § 7-433c was enacted to carry out the clear and
consistent intent of the legislature as to the nature of these benefits. See id.

Clark *v.* Waterford, Cohanzie Fire Dept.

remarks of Representative Gerald F. Stevens; see 14 S. Proc., Pt. 6, 1971 Sess., p. 2804, remarks of Senator Wilber G. Smith ("[W]e're always talking about the hazardous conditions of our policemen and our firemen. [We're] always talking about pouring in more moneys for them to do a better job and to be more effective. . . . [W]e also have to recognize that we're also adding and egging them on really, to move into and take care of these hazardous positions. . . . [I]t ought to be recognized that . . . throughout their careers, [these] policemen and firemen are indeed confronted more seriously with hazardous conditions. And I move for passage of . . . a vital piece of legislation, in support of our local police and our local fire departments.").[15]

The legislature again took up the subject in the 1990s and eventually restricted the benefits to make them unavailable to firefighters and police officers employed on or after July 1, 1996; see Public Acts 1996, No. 96-231, § 2; it continued to express the importance of giving the benefits to firefighters and police officers across the state. See, e.g., 35 H.R. Proc., Pt. 5, 1992 Sess., p. 1675, remarks of Representative Joseph A. Adamo ("Connecticut's [h]eart and [h]ypertension [l]aws . . . pertain to firefighters and police officers who serve in

---

[15] Later, there was also discussion that these benefits were intended to place firefighters and police officers on equal footing with those seeking workers' compensation. See *King* v. *Sultar*, supra, 253 Conn. 442 ("[the] history of . . . the bill eventually enacted as P.A. 77-520, § 1, which amended § 7-433c, demonstrates that it was intended to place those policemen [or firemen] who die or are disabled as a result of heart disease or hypertension in the same position vis-à-vis compensation benefits as policemen [or firemen] who die or are disabled as a result of service related injuries" (internal quotation marks omitted)). I find this latter point significant because nowhere in the workers' compensation realm are the benefits to firefighters and police officers restricted only to those persons employed by municipalities that participate in CMERS or persons who work a minimum number of hours per week. See General Statutes § 31-275 (9) (A) (iv) ("employee," for purposes of Workers' Compensation Act, includes "[a] paid member of any police department or fire department").

Clark *v.* Waterford, Cohanzie Fire Dept.

our municipalities in the [s]tate of Connecticut'' (internal quotation marks omitted)); id., pp. 1700–1701, remarks of Representative Dale W. Radcliffe ("[e]very individual who is subject to the special benefit of [§] 7-433c today, will remain subject to the special benefits . . . for the balance of the time that that individual is *employed by a police department or by a municipal fire department in the* [s]*tate of Connecticut*" (emphasis added)); see also, e.g., 39 S. Proc., Pt. 8, 1996 Sess., p. 2570, remarks of Senator Louis C. DeLuca ("[t]his is the so-called grandfather bill on heart and hypertension whereby all new hires [on or] after July 1, 1996 would not be under the heart and hypertension law, but all those now currently employed as *paid firemen, police in the* [s]*tate of Connecticut in municipal departments*, would still be under the heart and hypertension law" (emphasis added)).

The foregoing legislative history reflects that the legislature's purpose behind the statute has always been expansive and remedial, and the available evidence indicates that the benefits were intended to extend to firefighters and police officers in all municipalities. There is no suggestion anywhere in the legislative history that the legislature intended to limit the benefits only to firefighters and police officers employed by municipalities that participate in CMERS. It is implausible and unrealistic to believe that the legislature would enact such an important (not to mention seemingly arbitrary and inexplicable) restriction without so much as a mention anywhere in the legislative materials spanning decades. See *King* v. *Sultar*, supra, 253 Conn. 442–43 (giving weight to silence in legislative history when determining whether city employer could intervene in case involving § 7-433c benefits).

Heart and hypertension benefits have been around since 1951, and there has been extensive debate within the General Assembly since then as to the many aspects

of the statutory scheme. The history reflects significant discussion among supporters and dissenters alike from major cities across Connecticut, including those not participating in CMERS, such as Bridgeport and New Haven, about exactly how costly these benefits are to municipalities for eligible firefighters and police officers. See 35 H.R. Proc., supra, pp. 1688–89, remarks of Representative Radcliffe ("[W]e have to look very hard at what this special benefit has cost to our municipalities. . . . We're talking in [f]iscal [y]ear[s] 1989, and 1990, for example, in the [c]ity of Bridgeport, combined benefits [were] $1,700,000. New Haven, $1,100,000. West Haven, a distressed municipality, $204,000. And these numbers . . . represent [a] cost to each and every municipal taxpayer in the [s]tate of Connecticut."); Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 3, 1996 Sess., p. 824, testimony of Dennis Murphy, chief administrative officer of the city of Bridgeport ("I would like to say in . . . Bridgeport . . . heart and hypertension [benefits are] a burden that we continue to bear. . . . I would just, on behalf of those taxpayers, request this body to find the extraordinary responsibility to fund this benefit should you choose to continue it.").

Notwithstanding this extensive historical record documenting the numerous occasions of legislative consideration and reconsideration of the statutory scheme over many years, not a single person once said or suggested that these benefits are available only to some firefighters and police officers, namely, those employed by municipalities participating in CMERS or those who work a certain number of hours per week. There is not even a single reference, anywhere in the legislative history, to the definition of "member" in § 7-425 (5). In my estimation, it is virtually inconceivable that the legislature would enact a law of this prominence with-

Clark *v.* Waterford, Cohanzie Fire Dept.

out any reference whatsoever to a fundamental feature that so dramatically affects its scope.

In sum, the text and context of the relevant statutes, the broad remedial purpose of § 7-433c, and the legislative history convince me that the definition of "member" in § 7-425 (5) does not apply to the heart and hypertension statute. The terms "uniformed member" and "regular member" in § 7-433c instead mean what everyone has understood them to mean for the past seventy years, and do not restrict the availability of heart and hypertension benefits to firefighters and police officers paid by municipalities that participate in CMERS or to those who customarily work twenty hours or more per week. See *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 126–27, 584 A.2d 1172 (1991) ("[a] statute . . . should not be interpreted to thwart its purpose" (internal quotation marks omitted)). There is no indication in the statutory scheme that the legislature intended to limit heart and hypertension benefits to "member[s]," as defined by § 7-425 (5), and "[this court] should not [itself] enlarge [on] the limitations [§ 7-433c] imposes on recovery." *Costello* v. *Fairfield*, supra, 214 Conn. 194.

Accordingly, I respectfully dissent.